Warren G. HEROLD, Plaintiff–Appellee,

v.

HAJOCA CORPORATION,
Defendant–Appellant.

Warren G. HEROLD,
Plaintiff–Appellant,

v.

HAJOCA CORPORATION,
Defendant–Appellee.

Nos. 88–3955, 88–3967.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1988.

Decided Dec. 22, 1988.

Rehearing and Rehearing In Banc
Denied Jan. 19, 1989.

318

Walter H. Flamm, Jr. (Joseph A. Eagan, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Matthew B. Murray, Richmond & Fishburne, Charlottesville, Va., on brief), for defendant-appellant.

Edward B. Lowry (Robert W. Jackson, Michie, Hamlett, Donato & Lowry, P.C., Charlottesville, Va., on brief), for plaintiff-appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

An Age Discrimination in Employment action [1] confronts us here. The plaintiff, Warren G. Herold, was in part successful. His compensatory award should prevail over defendant Hajoca Corporation's motions for summary judgment, directed verdict and judgment *non obstante veredicto,* because Herold was able to demonstrate a failure of Hajoca to follow an announced

---

1. Under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, hereinafter "ADEA."

policy of laying off the shorter time employees among those qualified when lack of work resulted in termination. Herold showed there were several (perhaps four) younger employees retained when he was terminated who had less time in service than he did. However, as to the jury's award of a liquidated (punitive) damages amount equal to the compensatory award, the district judge correctly ordered entry of judgment *non obstante veredicto.* 682 F.Supp. 297.

## I.

In considering a motion for directed verdict or for a JNOV, the trial court is to apply the same standard: whether, viewing the evidence in the light most favorable to the non-moving party and giving him the benefit of all reasonable inferences, there is sufficient evidence in the record to support a jury verdict in his favor.[2] *Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir. 1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986); *Wilhelm v. Blue Bell Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). The court must not weigh the evidence or assess the credibility of witnesses. *Taylor,* 777 F.2d at 854. In reviewing a grant or denial of a motion for a JNOV or directed verdict, the appellate court is to apply the same standard that governed the trial court's determination. *Lust v. Clark Equipment Co.,* 792 F.2d 436, 438 (4th Cir.1986).

The Court has cautioned against granting motions for directed verdict and JNOV in discrimination cases where motive and causation are at issue:

> Determination of motive is ordinarily a function within the purview of the fact finder because so much depends on an assessment of the credibility of the witnesses. A finding of motive should not be set aside by the reviewing court un-

less the evidence clearly compels rejection.

*Taylor,* 777 F.2d at 854 (trial court did not err in denying defendant's motion for directed verdict and JNOV in ADEA case).

In ADEA cases, the Fourth Circuit permits plaintiffs to use the three-stage scheme of proof originally formulated for Title VII[3] cases. *EEOC v. Western Electric Co.,* 713 F.2d 1011, 1014 (4th Cir.1983). *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case of age discrimination. If he succeeds, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for treating plaintiff as he did. Once the defendant does that, the plaintiff must bear the burden of proving that he was the victim of intentional discrimination. He can do this by demonstrating that the defendant's proffered reason was a mere pretext and that, as between the plaintiff's age and the defendant's explanation, age was the more likely reason for the dismissal. *Western Electric,* 713 F.2d at 1014; *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 240–41 (4th Cir.1982).

▌ In a reduction-in-force case, such as we have here, a plaintiff must show four things to make out a *prima facie* case under ADEA: (1) that he is in the protected age group, (2) that he was discharged, (3) that at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations, and (4) that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff. *Western Electric,* 713 F.2d at 1014–15. An individual must be at least 40 years of age to fall

**2.** A decision on the compensatory aspect of the case against Hajoca on its JNOV and directed verdict motions eliminates the need for this Court to address the summary judgment argument. The standard for considering a motion for summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a)." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**3.** Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

within the protections of ADEA. 29 U.S.C. § 631(a). Herold was.

■ Concededly Herold established the first three elements of his *prima facie* case. Hajoca argues, however, that the fourth requirement remained unsatisfied because no younger workers were retained in the same job (*i.e.*, shipping clerk) that Herold held. It is true that the remaining younger workers not discharged when Herold was did not hold jobs with the same title as that assigned to Herold's job and that, on his discharge, his job duties were assigned to a worker older than Herold. But that does not mean that Herold failed to satisfy the fourth element of his *prima facie* case. *Western Electric* provides that a plaintiff can satisfy that element either by showing that persons outside the protected class were retained in the same position *or* by producing some other evidence indicating that the employer did not treat age neutrally. *Western Electric*, 713 F.2d at 1014–15. Thus, the plaintiff can satisfy the standard by showing that his employer treated an older worker differently than younger employees in similar positions.

■ The evidence, when viewed in the light most favorable to Herold, would support a jury finding that his employer treated him differently than a number of younger workers who were in similar positions and that Herold thus had made out a *prima facie* case of age discrimination. He presented evidence that he was dismissed while younger workers, at least one of whom was under 40 and therefore outside the ADEA–protected class, were retained. He presented evidence that he was qualified to perform the jobs of those younger workers, including the one under 40. In addition, he presented evidence that the company had a long-standing policy of laying off the workers with the least seniority first whenever faced with an economic downturn, but that the defendant had failed to follow that procedure in the instant case.

Hajoca responded by articulating four facially non-discriminatory reasons for dismissing Herold instead of the younger employees. First it was contended that Herold's job was the easiest to eliminate. Second, Hajoca contended that company policy did not permit an employee to displace or "bump" a worker with less seniority if the two employees were in different job classifications. Third, Hajoca argued that Herold was less versatile in performing other jobs. Finally, it was argued that Herold was not as good a worker as the others.

Herold then bore the burden of proving that Hajoca's proffered reasons were pretexts. Herold produced evidence that all the jobs in the Staunton, Virginia, branch were virtually interchangeable. He testified that the company policy, if followed, would have allowed him to "bump" workers with less seniority, even if they were in other job classifications.[4] Herold presented evidence that he could perform all jobs but one and could have performed that one if he had received nominal training. He presented evidence from his supervisor and co-workers that his job performance had been good. Herold also presented evidence that when faced with cutbacks, the employer laid off an older truck driver while retaining two younger ones in the same job category.

When viewed in the light most favorable to Herold, and when all reasonable inferences are drawn in Herold's favor, the jury could properly have found that Hajoca's proffered reasons for dismissing Herold were mere pretexts and that it was more likely that age was the real reason for his firing.

The evidence at trial presented two versions of what happened and resolution of the case depended on which witnesses were credible. Determining witness credibility

---

**4.** Hajoca has argued that the company's "bumping" policy is irrelevant to the case because a mere violation of seniority rights does not give rise to an ADEA action. The argument misses the point. Herold does not claim that he is entitled to relief merely because he was dismissed and less experienced workers retained. He has introduced evidence of the "bumping" policy only to demonstrate that the company deviated from its normal procedure when it came time to apply the policy to a 56-year-old employee.

is the job of the jury. The district judge was correct in not taking that task away from the jury and in not overturning the verdict of the jurors once they had made a judgment about which witnesses to believe.

Hajoca points to four ADEA cases in which it has been held that no discrimination was proved and argues that those decisions compel the same result in the instant case. However, there are crucial differences between the facts of those cases and the facts of this one. In *Western Electric, supra,* we reversed a finding of discrimination because the trial court misconstrued the law by requiring the plaintiff to prove only the first three, rather than all four, elements of the *prima facie* case. 713 F.2d at 1015. In addition, the *Western Electric* court found that, even if plaintiffs had made out a *prima facie* case, many of the defendant's proffered reasons for demoting the employees had gone unchallenged by the plaintiffs. *Id.* at 1015–16. Likewise, in three other cases relied on by the appellant—*Fink v. Western Electric Co.,*[5] *Lovelace v. Sherwin–Williams Co.,*[6] and *Smith v. Flax*[7]—the plaintiffs failed to present adequate evidence contradicting most of the defendants' proffered explanations for their personnel decisions. In the instant case, by contrast, Herold presented evidence directly challenging all of the reasons offered by Hajoca to explain its decision to dismiss him.

In sum, the evidence, when viewed in the light most favorable to the plaintiff, would allow the jury to find that the employer treated Herold differently than younger workers and that Herold's age, rather than the reasons proffered by Hajoca, more likely accounted for the dismissal of Herold. Therefore, the trial court properly denied the motions for a directed verdict and a JNOV on the compensatory damages claim.

## II.

Turning to Hajoca's motion for a new trial, we should not reverse a denial of a motion for a new trial unless the trial court clearly abused its discretion. *Taylor,* 777 F.2d at 855. Unlike motions for JNOV or directed verdict, a motion for a new trial allows the trial court to weigh the evidence and assess credibility of witnesses. *Id.* at 855. A court may grant a new trial if the verdict was against the clear weight of the evidence, was based upon false evidence or would result in a miscarriage of justice. *Abasiekong v. Shelby,* 744 F.2d 1055, 1059 (4th Cir.1984).

Hajoca has argued that the trial court erroneously believed that the standard for ruling on motions for a new trial was identical to that for considering a JNOV motion. Because of this, the contention is made that the trial court only considered the evidence favorable to the plaintiff, rather than the entire evidence in ruling on the motion.

As already explained, there was sufficient evidence presented to allow the jury to conclude that Hajoca's proffered explanations for dismissing Herold were mere pretexts and that age was the more likely reason for Herold's discharge. The district judge had authority to assess the credibility of witnesses in light of the evidence. Nothing suggests that he abused his discretion when he concluded that the jury verdict should stand.

## III.

■ We must not disturb the trial court's ruling on the relevancy of the statistical evidence offered by Hajoca unless such decision constituted an abuse of discretion. *See Ward v. Johnson,* 690 F.2d 1098, 1113 (4th Cir.1982) (*en banc*). The district judge did not abuse his discretion in excluding Hajoca's statistics on relevancy grounds. The district judge agreed to allow Hajoca to present statistical evidence concerning employees who were terminated at the company's Staunton branch for a period 18 months before and 18 months after the dismissal of Herold. The court refused to allow statistical evidence for the company's Mid–Atlantic region as a whole.

---

**5.** 708 F.2d 909 (4th Cir.1983).

**6.** 681 F.2d 230 (4th Cir.1982).

**7.** 618 F.2d 1062 (4th Cir.1980).

It was reasonable to conclude that such region-wide statistics would be of limited probative value in determining whether discrimination took place in one particular branch. Furthermore, the court had to take precautions to ensure against juror confusion. Fed.R.Evid. 403. The district judge could reasonably have concluded that the confusion the statistics might cause for the jury would outweigh their probative value. Hajoca also sought to introduce statistical information for the Staunton facility that covered a period beginning as much as three years before the firing of Herold and up to two years after his layoff. Again, the juror confusion over such statistics could outweigh their probative value.

In sum, the district court was well within its discretion. Therefore, there is no reason to consider the appellee's argument that such statistics could only have been presented with the assistance of experts.

### IV.

■ We will not disturb a trial court's award of attorney's fees and costs absent an abuse of discretion. *Cooper v. Dyke,* 814 F.2d 941, 950 (4th Cir.1987) (attorneys' fees); *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (same); *Flint v. Haynes,* 651 F.2d 970, 973 (4th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982) (costs). This court emphasized in *Barber* that:

> [T]he allowance of attorneys' fees " 'is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered....' "

577 F.2d at 226 (citations omitted).

Abuse of discretion did not arise in the matter of an award of $47,382.25 in attorney's fees to Herold's lawyers. Hajoca contends that, because of the contingent fee arrangement, there was abuse of discretion because the district court awarded Herold nearly four times as much as He-

rold was obligated to pay his counsel. Hajoca argues that the amount due counsel under the contingent fee arrangement imposes a ceiling on the amount of the attorney fees the court may award. We have clearly held to the contrary. *Cooper,* 814 F.2d at 951 (attorneys' fees under 42 U.S.C. § 1988),[8] relying on *City of Riverside v. Rivera,* 477 U.S. 561, 576–80, 106 S.Ct. 2686, 2695–97, 91 L.Ed.2d 466 (1986).

■ Appellant also argues that paralegal and law clerk time is by definition not encompassed within the term "attorney's fees." Two of our cases have assumed that paralegal and law clerk time was to be included in attorney's fees. *See Lilly v. Harris–Teeter Supermarket,* 842 F.2d 1496, 1510 (4th Cir.1988) (paralegals); *Yohay v. Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 974 (4th Cir.1987) (law clerks). We are similarly inclined.

Apart from the contingent fee and lawyer/paralegal issues, which we have dealt with, Hajoca has failed to point to a single example where the trial court erred in setting the attorney's fees. The district court clearly explained the basis for its decision, examining the twelve factors the court has emphasized should be weighed in setting attorney's fees. *See Barber,* 577 F.2d at 225 & n. 28. The district court has made a careful examination of each factor and reached a reasonable conclusion. Accordingly, there has been no abuse of discretion.

■ Next we meet the argument that the district court erred in taxing as costs expenses for deposition transcripts. Hajoca relies on 28 U.S.C. § 1920(4), which allows a judge to tax as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." The district court found that the deposition transcript costs fell within § 1920(4) because portions of those transcripts were used at trial. The court did not specify how they were used. Hajoca claims that unless the transcripts themselves were in-

---

**8.** The standard for award of attorneys' fees in age discrimination cases is the same as that applied in § 1988 actions. *Smith v. University*

*of North Carolina,* 632 F.2d 316, 350 (4th Cir. 1980).

troduced into evidence their cost is not taxable to the defendant. The two district court cases Hajoca has relied on do not support such a proposition. *See Sun Pub. Co. v. Mecklenburg News, Inc.*, 594 F.Supp. 1512, 1524 (E.D.Va.1984); *Wolfe v. Wolfe*, 570 F.Supp. 826, 829 (D.S.C.1983). Both decisions would permit taxing deposition expenses as costs if those depositions were used for impeachment purposes. When the district judge said that portions of such depositions were used at trial, no doubt he meant that, although they were not actually introduced in evidence, they were used to impeach witnesses.

■ Finally, Hajoca has argued that attorney travel expenses are not properly taxable as costs. Hajoca reasons that because neither the ADEA nor the Fair Labor Standards Act,[9] 29 U.S.C. § 201, *et seq.*, specifically lists travel expenses as recoverable, a prevailing ADEA plaintiff may only recover for those items enumerated in 28 U.S.C. § 1920, the general statutory provision governing taxation of costs. To buttress the argument, appellant relies on *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Hajoca misunderstands the Supreme Court's decision and Fourth Circuit precedents.

*Crawford* held that § 1920 defines the term "costs" as used in Fed.R.Civ.P. 54(d), which gives trial courts discretion to impose costs on losing parties. *Id.* 107 S.Ct. at 2497. Thus, the Supreme Court reasoned, Rule 54(d) does not provide authority to tax as costs those expenses not enumerated in 1920. We have emphasized, however, that, where attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b)),[10] the trial court is not limited to Rule 54(d), but, in addition, has authority to include litigation expenses as part of a "reasonable attorney's fee." *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 623 (4th Cir.1978). We have defined such litigation expenses to include "necessary travel." *Id.* There-

fore, the trial court did not abuse its discretion in including as costs the travel expenses of the attorneys.

**V.**

■ We proceed to consider the propriety of the JNOV overturning the jury's award of liquidated damages. When reviewing a JNOV, an appellate court must view the evidence in the light most favorable to the non-moving party to determine if the jury could properly have found in that party's favor. *Taylor*, 777 F.2d at 854. The ADEA provides that a plaintiff may recover liquidated damages whenever his employer "willfully" violates the Act. 29 U.S.C. § 626(b). The jury found a willful violation and assessed liquidated damages against Hajoca. The district judge then granted Hajoca's motion for a JNOV.

The ADEA does not define "willful" but this court has recently provided some guidance in interpreting the term. *See Gilliam v. Armtex, Inc.*, 820 F.2d 1387 (4th Cir. 1987). Although *Gilliam* failed to offer an all-inclusive definition of "willful," it upheld a JNOV after a jury finding of willfulness because there was no evidence that "the employer acted in bad faith or with knowledge that its action was so lacking in justification as to warrant a jury's characterization of its conduct as willful." *Id.* at 1390. The Court also cited a Third Circuit case that equated willfulness with outrageousness. *See Dreyer v. Arco Chemical Co.*, 801 F.2d 651 (3d Cir.1986). We did not, however, explicitly state that we were adopting such a definition. The *Gilliam* court made clear, nevertheless, that mere knowledge that the ADEA prohibited age discrimination and mere failure to obtain legal advice before dismissing an older employee did not constitute willfulness. Otherwise, reasoned the court in *Gilliam*, nearly every ADEA violation would result in liquidated damages. *Gilliam* further suggested that the Fourth Circuit would be hesitant to find willfulness where an eco-

**9.** The ADEA incorporates the attorneys' fees provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b). *See* 29 U.S.C. § 626(b).

**10.** *See* note 9, *supra.*

nomic downturn was a factor in the plaintiff's dismissal. *Id.* at 1390.

In light of *Gilliam,* the district court was correct in granting the motion for a JNOV.[11] Herold's counsel argues that three facts support the jury finding of willfulness: (1) the defendant knew that ADEA prohibited age discrimination; (2) the defendant knew that employees laid off were older than some of the workers retained; and (3) the defendant failed to seek or receive any legal advice or guidelines for complying with ADEA. The arguments do not suffice to validate a liquidated damages award.

### VI.

In conclusion:

A. The district court did not err in denying Hajoca's motions for summary judgment, for a directed verdict and for JNOV.

B. The district court did not abuse its discretion in denying Hajoca's motion for a new trial.

C. The district court did not abuse its discretion in excluding Hajoca's statistical evidence.

D. The district court did not abuse its discretion in awarding attorney's fees and costs to Herold.

E. The district court did not err in entering a JNOV overturning the jury's award of liquidated damages.

In all respects the judgment is

AFFIRMED.

---

11. Herold's assertion that JNOV is improper because Hajoca failed to object to the jury instruction on willfulness is without merit. The Fourth Circuit decided *Gilliam* between the time of the jury instruction and the granting of the JNOV motion. At the time of trial, Hajoca could not be held to anticipate the Fourth Circuit's *Gilliam* decision.