914 F.2d 248
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel R. LEONARD, Plaintiff-Appellant,
v.
GOULD, INC., Gould, Inc., t/a Advanced Systems Development
Division, Defendants-Appellees.
 No. 90-2036.
 United States Court of Appeals, Fourth Circuit.
 Argued July 19, 1990.
Decided Sept. 13, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-88-2902-S)
 David Fishman, Washington, D.C., (Argued), for appellant; John V. Murphy, Catonsville, Md., on brief.
 Jay Robert Fries, Kruchko & Fries, Baltimore, Md. (Argued), for appellee; John G. Kruchko, Kruchko & Fries, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before CHAPMAN and WILKINSON, Circuit Judges, and C. WESTON HOUCK, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Daniel R. Leonard (Leonard) brought this action against defendant-appellee Gould, Inc. (Gould), alleging that Gould discriminatorily terminated Leonard's employment because of his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Secs. 621-634. On the parties' cross-motions for summary judgment, the district judge granted Gould's motion, finding that Leonard's replacement by an older person precluded his prima facie case under Goldberg v. B. Green and Co., 836 F.2d 845 (4th Cir.1988), and that Leonard failed to present sufficient direct or circumstantial evidence of intentional discrimination. We affirm.
 
 
 2
 * A retired U.S. Army Colonel, Leonard was hired in May 1985 by Gould, an electronics corporation, in Gould's Advanced Technology Center (ATC) at Glen Burnie, Maryland. Born on May 4, 1935, Leonard was 50 years old at the time and had no formal engineering training. In November 1985, ATC became the Advanced Systems Development Division (ASDD), a marketing and research division of Gould's Defense Systems Business Section (DSBS). In May 1986, ASDD won a contract with the U.S. Army known as the Mirador project, and Leonard was made program manager, reporting to James Moore, the Director of Program Management. According to Leonard, he performed his duties in more than a satisfactory manner.
 
 
 3
 Because Gould experienced financial difficulties in fiscal years 1985 and 1986, Gould decided to sell the operating divisions that comprised DSBS, and to eliminate ASDD, because it no longer had a marketing and research function to perform. Consequently, Gould merged ASDD's Glen Burnie facility into the Ocean Systems Division (OSD), also located at Glen Burnie. Joseph Luckey was responsible for integrating the personnel of ASDD into OSD. Apparently concluding that he had more candidates for management positions in OSD than there were jobs available, Luckey laid off many employees at Glen Burnie, including Leonard on October 3, 1986, when he was 51 years old. Luckey considered both Leonard and Moore for the program manager position of the Mirador project, and chose Moore because he had an engineering background, 10 to 20 years experience as a program manager, and slightly greater seniority. When he was hired for the position, Moore was 55 years old, or about four years older than Leonard. Subsequently, Moore left Gould, in February 1987, and the position was filled by Sam Patterson, 42 years old at the time, in March of 1987.
 
 II
 
 4
 Section 623 of the ADEA makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. Sec. 623(a)(1). The substantive elements of an age discrimination claim are
 
 
 5
 (a) that an employee covered by the ... [ADEA] (b) has suffered an unfavorable employment action by an employer covered by the ... [ADEA] (c) under circumstances in which the employee's "age was a determining factor" in the action in the sense that " 'but for' his employer's motive to discriminate against him because of his age, he would not [have suffered the action.]"
 
 
 6
 Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir.1982) (quoting Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1112 (4th Cir.), cert. denied, 454 U.S. 860 (1981) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir.1979))).
 
 
 7
 In order to prove age discrimination under the ADEA, a plaintiff has two options. Either a plaintiff may "meet [his] burden 'under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue,' " or a plaintiff "may rely on the judicially created proof scheme for Title VII cases ... which has been adapted for application in ADEA litigation." Goldberg v. B. Green and Co., 836 F.2d at 847-48 (quoting EEOC v. Western Elec. Co., 713 F.2d 1011, 1014 (4th Cir.1983) (citations omitted)).
 
 
 8
 Under the latter option, a plaintiff may establish a prima facie case of age discrimination in cases involving work force reductions, such as here, by showing
 
 
 9
 (1) that he is in the protected age group,[1] (2) that he was discharged, (3) that at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff.
 
 
 10
 Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir.1988), cert. denied, 109 S.Ct. 3159 (1989) (emphasis added) (citing Western Elec., 713 F.2d at 1014-15). If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for treating plaintiff as he did." Herold, 864 F.2d at 319 (citing Western Elec., 713 F.2d at 1014-15). Finally, if the defendant supplies a reason, the plaintiff must "bear the burden of proving that he was the victim of intentional discrimination [by] demonstrating that defendant's proffered reason was a mere pretext and that, as between plaintiff's age and the defendant's explanation, age was the more likely reason for the dismissal." Id.
 
 
 11
 The district court, in an admittedly brief opinion that did not spell out and precisely apply the above analysis, held that Leonard had failed to make out a prima facie case of age discrimination under either of the two modes of proof available to him. In particular, the court noted that "Leonard was replaced in his job by Moore, an individual older than he," and that Leonard had presented "no direct evidence" and only "circumstantial evidence consisting of highly questionable statistical analysis [sic] alone." After reviewing the district court's holding de novo, weighing the evidence presented to determine if a reasonable jury could return a verdict for Leonard, we agree with the district court's conclusions.
 
 
 12
 Leonard asserts that the court erred by holding that he could not make out a prima facie case under the scheme set forth in Herold because the person who replaced him was also a member of the protected class. In particular, Leonard insists that it is not necessary to show that the replacement was outside the protected class, stating correctly that a plaintiff may alternatively satisfy the fourth element of the Herold scheme by proving "that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff." Herold, 864 F.2d at 320.
 
 
 13
 It is uncertain whether the district court actually found that such a showing--that the replacement was outside the protected class--was the only way to satisfy the fourth element. Nonetheless, this does not affect our analysis, because we do not believe that Leonard established a prima facie case by providing sufficient "other evidence" for a jury to reasonably conclude that Gould "did not treat age neutrally."[2] Moreover, we do not believe that Leonard supplied sufficiently probative direct or indirect evidence indicating any intent or motivation to discriminate, which ultimately must be proved under either mode of proof set out in Herold.
 
 
 14
 First of all, there was no probative direct evidence of discrimination against Leonard. Leonard asserts Dr. Howard Blood's affidavit "specifically noted a linkage between the selection of individuals for layoff and their age." This is not the case. While Dr. Blood discerned "an almost 'across the board' firing of senior engineers," he subsequently explained his use of the word "senior," saying that he "was not referring to age" or to "length of service with the company," but to the "more highly paid and supervisory personnel." Thus, Dr. Blood's affidavit simply underscores Gould's legitimate attempts to reduce costs and increase profitability by eliminating unnecessary highly paid personnel; the affidavit does not permit a reasonable, non-speculative inference that Gould fired Leonard because of his age.
 
 
 15
 Second, the indirect or circumstantial evidence is insufficient to create a triable issue of fact. Leonard introduced statistical analysis by Dr. Farrell Bloch showing that twenty-four out of the twenty-five individuals terminated from managerial, engineering, and professional jobs around the time Leonard was terminated were over forty years old. Dr. Bloch's analysis also indicated observed disparities of at least two standard deviations and exceeding three standard deviations in some cases. The district court rejected the statistical analysis, finding that it was "highly questionable" and "flawed by inappropriate databases and methodology." These flaws included significant overlaps and additions to groups of employees compared, and the limiting of the sample to those employees earning over $35,000. The court also noted that, even if the statistical analysis was accepted, "statistical analysis [is] of dubious weight ... when relied on as the sole evidence of discrimination."
 
 
 16
 We are not persuaded that the district court improperly rejected Leonard's statistical analysis. Leonard does not indicate that the second database actually corrected the overlaps and additions marring the first database; Leonard is unable to explain satisfactorily why the sample was limited to those individuals earning over $35,000, especially given Dr. Bloch's testimony that he did not make this decision himself and that he found no special significance to the number; and the statistical sample included a large number of engineers, whose employment status was less relevant to Leonard, who was not an engineer but a manager. Even if these flaws are overlooked, we agree with the district court and reiterate that "statistics cannot alone prove the existence of a pattern or practice of discrimination or even establish a prima facie case." Warren v. Halstead, 802 F.2d 746, 753 (4th Cir.1986). Thus, where, as here, a plaintiff's case is based exclusively on statistical evidence that suffers from a variety of inadequately explained shortcomings, summary judgment is proper.[3]
 
 
 17
 Alternatively, Leonard maintains that the district court should have looked beyond Moore, the older worker who temporarily replaced Leonard, to Patterson, the younger worker who replaced Moore. Leonard cites Sorba v. Pennsylvania Drilling Co., 821 F.2d 200, 202 (3d Cir.1987), cert. denied, 484 U.S. 1019 (1988), where the Third Circuit emphasized whether the plaintiff "ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." (Emphasis added.) Even if the Fourth Circuit employed such language, the record does not reveal any evidence that Gould was aware that Moore intended to leave voluntarily several months after Leonard's termination. As a result, we do not believe that a jury could infer that Gould's choice of Moore was a sham designed to give the appearance that Gould was not discriminating against Leonard because of his age.
 
 III
 
 18
 It is clear that Herold allows Leonard to establish the fourth element of his prima facie case either by showing that he was replaced by a person outside the protected age class or by presenting other evidence that Gould did not treat age neutrally. However, the latter burden is made daunting by the fact that Leonard was replaced by an individual four years older than he. We do not believe that the district court erred by emphasizing this fact, and so affirm.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The ADEA limits its protections to individuals who are at least 40 years of age. 29 U.S.C. Sec. 631(a)
 
 
 [2]
 We note that, even if Leonard established a prima facie case of age discrimination, Gould successfully provided a legitimate, nondiscriminatory reason for terminating Leonard by explaining that it picked Moore over Leonard because of Moore's engineering background, 10 to 20 years of experience as a program manager, and greater seniority
 
 
 [3]
 Leonard asserts that the district court improperly took away from the trier of fact the determination of whether to believe Leonard's or Gould's statistics. This contention is based on the court's finding that Leonard's statistical analysis, "[w]hen viewed in comparison with [Gould's] statistical analysis, ... is insufficient to create a triable issue." To the extent the court actually weighed the statistical analyses offered by Leonard and Gould, the district court erred, because issues of fact are for the jury to decide. However, it is clear that the district court relied primarily on the intrinsic weaknesses of Leonard's statistics, and we affirm the court on this basis