931 F.2d 888
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
M.J. WILLIAMS, Jr., Plaintiff-Appellant,
v.
NATIONAL ASSOCIATION OF COLLEGE AND UNIVERSITY BUSINESS
OFFICERS (NACUBO), an Illinois corporation,
Defendant-Appellee.
 No. 90-2407.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided April 25, 1991.
As Amended June 19, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-89-1427-JFM)
 Daniel S. Koch, Kurz, Koch & Doland, Washington, D.C., for appellant.
 Benjamin P. Lamberton, Hewes, Morella, Gelband & Lamberton, Washington, D.C., (argued) for appellee; Anthony C. Morella, Hewes, Morella, Gelband & Lamberton, Washington, D.C., on brief.
 D.Md.
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 M.J. Williams, Jr., whose employment with the National Association of College and University Business Officers (NACUBO) was terminated on July 31, 1988, sued NACUBO claiming that it violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-34, and the District of Columbia Human Rights Act, D.C.Code Ann. Sec. 1-2512. Williams also alleged that NACUBO breached an employment contract and an implied covenant of good faith and fair dealing.
 
 
 2
 The district court dismissed the counts based on an implied covenant and granted summary judgment in favor of NACUBO on the remaining counts. Because substantial factual issues were raised on the issue of whether age was a determining factor in Williams' discharge, we reverse the judgment on the claim based on the ADEA. We affirm the judgment Williams' claims for breach of contract and breach of an implied covenant. He did not appeal the district court's ruling on the claim based on the District of Columbia Human Rights Act.
 
 
 3
 * NACUBO is a non-profit corporation whose purpose is to promote the sound management and financial administration of colleges and universities. Williams commenced his employment with NACUBO in 1973 and, at the time of his discharge, was serving as the director of its Member Services Division. He was 65 years old.
 
 
 4
 In 1986 NACUBO began to experience financial difficulties, and by the end of the fiscal year which ended on May 31, 1987, NACUBO had a deficit of $282,530. In response to the financial difficulties, Dr. Caspa L. Harris, NACUBO's chief administrative officer, recommended to his board that the Higher Education Administrative Referral Services Division be abolished, that the personnel level in the Public Policy and Management Division be reduced and that it take on additional responsibilities, and that a new division for development be created to absorb this responsibility from the Member Services Division, managed by Williams. In addition, Harris arranged for a review of the Member Services Division and its functions by Coopers & Lybrand, a certified public accounting firm, which later recommended that the Division be abolished and that its functions be contracted to an outside firm. On April 1, 1988, Harris informed the employees of the Member Services Division that their jobs would be abolished, but he waited until May 31, 1988, to inform Williams that he would be losing his job. In a follow-up letter dated June 1, 1988, Harris informed Williams that the "primary reason" for his termination was "financial." J.A. 45.
 
 
 5
 Contending that he was discriminated against because of his age, Williams appealed the termination decision to NACUBO's executive committee, which found that Williams' employment had been terminated because his primary duties had been transferred to an outside contractor, as recommended by Coopers & Lybrand. The committee also found that Williams' performance as the director of the Member Services Division had been inadequate, that he had engaged in disruptive behavior, and that he had resisted expenditure guidelines. The committee concluded that Williams was not a victim of age discrimination.
 
 II
 
 6
 Under the ADEA, a plaintiff may prove his case either by direct or indirect evidence of age discrimination, or by using the judicially-created proof scheme adapted from Title VII cases. See, e.g., EEOC v. Western Elec. Co., 713 F.2d 1011, 1014 (4th Cir.1983). Under the Title VII proof scheme, a plaintiff must prove a prima facie case of discrimination by demonstrating that (1) he is in the protected class, (2) he was fired, (3) at the time he was fired he was performing to the employer's expectations, and (4) persons of comparable qualifications outside the protected class were retained in the same position or there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff. Id. at 1014-15. When the plaintiff establishes a prima facie case, the burden of going forward shifts to the employer. If the employer articulates a legitimate nondiscriminatory reason for the adverse employment action the plaintiff must then prove that the employer's stated reasons were pretextual and that age was a determining factor. The plaintiff always carries the burden of proving that he was the victim of intentional age discrimination. Id. at 1014.
 
 
 7
 The district court found that Williams satisfied the first three elements for establishing a prima facie case of age discrimination under the Western Electric proof scheme. The court found, however, that Williams failed to satisfy the fourth element--that he had been replaced by a comparably qualified employee who was not in the protected age group.
 
 
 8
 Williams argues that he was replaced by Debra Rodeffer, who had been the director of the Higher Education Referral Service Division, which was abolished as of May 31, 1988. J.A. 77. Williams notes that, as head of the newly created Special Programs Division, she assumed a substantial portion of his responsibilities as director of the Member Services Division. J.A. 246. Moreover, in the June 1 termination letter, Harris asked Williams to "assist the person(s) assigned your previous duties." J.A. 45. According to Williams, Harris later told him orally that his replacement was Rodeffer. J.A. 234. This evidence suggests that there is a factual issue as to whether Rodeffer was his replacement, even if, as NACUBO argues, the bulk of Rodeffer's time is now spent on tasks not previously performed by Williams.
 
 
 9
 Moreover, where reductions in force are involved, such as here, Williams can satisfy the fourth element of prima facie ADEA case by demonstrating that NACUBO did not treat age neutrally in its termination decisions. Herold v. Hajoca Corp., 864 F.2d 317, 320 (4th Cir.1988), cert. denied, 490 U.S. 1107 (1989); EEOC v. Western Elec., 713 F.2d at 1015. If the plaintiff shows that his employer treated him differently from a younger worker who was in a similar position, then the fourth element is satisfied. Hajoca, 864 F.2d at 320. Moreover, because reductions in force often alter the structure of a company by abolishing positions and departments and by making transfers, the fourth element may be satisfied by making an analysis that is analogous to the traditional fourth element of Western Electric. See Duke v. Uniroyal, Inc., --- F.2d ---- (4th Cir. April 1, 1991) (No. 89-1830).
 
 
 10
 Here, evidence was offered that NACUBO did not treat age neutrally. Rodeffer and Williams were both relieved of their responsibilities as directors of NACUBO divisions at approximately the same time and as the result of cost-cutting measures inaugurated by Harris, yet Rodeffer was retained in another capacity while Williams was not. Rodeffer, 32 at the time, was not in the protected age group. This possible coincidence was repeated throughout the reduction in force process. Apparently eight positions in all were abolished as part of the restructuring. Four persons who filled these positions were under 40 and they were retained elsewhere in the organization. The four persons who were over 40, including Williams, were terminated.
 
 
 11
 NACUBO argues that two additional positions, beyond the eight, were abolished, and one person filling these two positions was under 40 and not retained, and the other was over 40, and she was retained. Williams, however, has submitted evidence that refutes NACUBO's arguments regarding these two positions, evidence which indicates that the positions were not in fact abolished. J.A. 22829, 237-40. While NACUBO may well be proven correct on this issue, any factual dispute at the summary judgment stage must be resolved in favor of Williams.
 
 
 12
 Additional evidence was presented by plaintiff that could be considered by a jury to find that age was not treated neutrally, evidence which also could constitute direct evidence of age discrimination.
 
 
 13
 Harris, who was the decisionmaker in the terminations, supposedly told Williams that "he wanted to give [Williams'] job to a younger and less highly paid employee to do the things that [Williams] was doing." J.A. 233. Williams testified that Harris also stated in reference to other employees over 40, that she was "too old to work and too old to do a job," J.A. 158, and that "he could get the same work 'done cheaper' by reassigning it to younger, less experienced employees." J.A. 79. That this type of statement was made was corroborated by another witness, Mr. Brown, who testified, "Mr. Harris had told one that he understood it was hard doing the job with some of the older people I had on the staff." J.A. 85. Indeed, Mr. Harris conceded having this type of conversation. He testified:
 
 
 14
 Q. Did Ms. Rodefer's lower salary enter into your decision?
 
 
 15
 A. I would say it perhaps did because, based on salary, I am trying to cut expenses. Obviously, I am not going to take a very high paid person when I can get somebody to do the same work at a lower salary. It had some bearing on it.
 
 
 16
 J.A. 131.
 
 
 17
 Factual issues were also raised by evidence offered by Williams that the reasons articulated by NACUBO for termination of Williams were pretextual. NACUBO took the position that Williams was terminated in part because it had experienced financial difficulties and that Coopers & Lybrand had recommended abolishing the Members Service Division (including part of Williams' job) in favor of contracting the work outside. In response, Williams offered evidence that the company's financial difficulties apparently had abated by May 1988. J.A. 82. In July 1988, NACUBO expected to post a surplus of over $20,000 for the fiscal year which ended on May 31, the date that Williams was told that he would be let go. J.A. 82. While the financial turnaround may have resulted, at least in part, from the termination of a number of employees, Williams contends that indications of the reversal of fortune appeared earlier and could suggest that perhaps NACUBO had no financial need to fire him. J.A. 55. Williams also offered some evidence that, although NACUBO stated that the functions of the Members Service Division were transferred to outside contractors, over 15 months later, when discovery on the issue was being conducted, NACUBO was still performing the most significant portion of the jobs in-house. J.A. 69.
 
 
 18
 In short, Williams has pointed to sufficient evidence in the record to raise important questions on the paramount issue of whether his age was a determining factor in the decision to terminate him, and summary judgment, therefore, should not have been entered on the ADEA claim.
 
 III
 
 19
 As an additional basis for relief, Williams argues that he had an employment contract with NACUBO, based on an employee handbook, which NACUBO breached when it fired him. Williams also argues that NACUBO violated an implied covenant of good faith and fair dealing by discriminating against him because of his age and by denying him severance benefits.
 
 
 20
 For the reasons stated by the district court in its memorandum opinion of May 18, 1990, we affirm the judgment in favor of NACUBO on the breach of contract claim. J.A. 41-42. Because Williams was an at-will employee, he also cannot assert an implied covenant of good faith and fair dealing as an independent cause of action, and we also affirm dismissal of that claim. See, e.g., Gomez v. Trustees of Harvard University, 676 F.Supp. 13, 15 (D.D.C.1987).
 
 
 21
 For the foregoing reasons, the judgment on Williams' claim under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 62134, is reversed, and the judgment on all other claims is affirmed. The case is remanded for further proceedings.
 
 
 22
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.