961 F.2d 211
 69 Fair Empl.Prac.Cas. (BNA) 416
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
MARION MOTEL ASSOCIATES, a/k/a Park Inn International,
Defendant-Appellant.
 No. 91-2070.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1991
Decided: May 5, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Shelby. Richard L. Voorhees, Chief District Judge. (CA-89-185-SH-C)
 Argued: Samuel James Ervin, IV, Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., Morganton, North Carolina, for Appellant.
 Barbara L. Sloan, Office of the General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Appellee.
 On Brief: Donald R. Livingston, Acting General Counsel, Gwendolyn Young Reams, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, Office of the General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before RUSSELL, PHILLIPS, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The Equal Employment Opportunity Commission (the Commission) brought an action against Marion Motel Associates d/b/a Park Inn International (Park Inn), alleging, inter alia, that Park Inn discharged four of its employees on the basis of their ages, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA). A jury found that Park Inn had willfully discriminated against two of the four employees. The district court denied Park Inn's motion for judgment notwithstanding the verdict and its alternative motion for a new trial. In accordance with the jury's verdict, the court awarded the employees back pay and liquidated damages. Park Inn now appeals the district court's refusal to grant its motion for judgment n.o.v. on the issues of liability and liquidated damages. Finding no error in the district court's denial of Park Inn's post-trial motions, we affirm.
 
 
 2
 * Park Inn is a small hotel in the mountains of North Carolina, owned since 1986 by Gary Hewitt. When he purchased the hotel, Hewitt lived in Virginia where he owned and operated a remodeling and construction business. After experimenting with various other arrangements, in June of 1987 Hewitt left the day-to-day operation of the hotel in the hands of a manager, Gary Hornaday. Hornaday reported directly to the comptroller of Hewitt's remodeling business, Charles Duff. Unknown to Hewitt and Duff, Hornaday was extremely ill with Hodgkins disease and was absent often during his tenure as manager. While Hornaday was manager, the hotel's physical plant deteriorated and the operation consistently lost money.
 
 
 3
 Aileen Peterson (Aileen), 48 years old, had been employed at the hotel since 1986 as the desk clerk on the first shift (7:00 am to 3:00 pm). Initially she was an hourly employee, but was appointed assistant manager and put on salary under Hornaday. Due to Hornaday's frequent absences, she undertook many of the manager's responsibilities. Effie Peterson (Effie), 49 years old, began working at the hotel in 1981, and, during the period at issue, worked as a second shift desk clerk (3:00 pm to 11:00 pm).
 
 
 4
 In December of 1987, Hewitt fired Hornaday and, with Duff's help, assumed direct control over Park Inn. In January of 1988 he undertook renovation of the hotel's physical plant. He also began running classified adds in the local newspaper seeking job applicants. In spite of the fact that all or almost all of the hotel's staff positions were filled, the initial advertisement stated that "all positions [were] available," including "desk personnel" and "supervisors." Later advertisements sought applications from "young and energetic persons with outgoing personalities." Hewitt testified that he began running the advertisements so that he would be prepared to fill vacancies in case any of the hotel employees resigned. However, Ms. Foster, one of the employees hired by Hewitt as a result of the advertisements, testified that Hewitt told her that he wished to replace the older desk clerks with young, attractive employees.
 
 
 5
 The newspaper advertisements generated dozens of applications. During the job interviews each applicant was presented with an application form that included a prominent section summarizing the requirements of the ADEA. That section instructed applicants not to provide information regarding their ages unless the employer certified that age was a necessary qualification for the job. Hewitt and Duff nevertheless asked the applicants their ages and marked their responses on the application forms. Duff testified that he collected this information to avoid violating child labor laws. As a result of the interviews, Park Inn hired five new desk clerks ranging in age between 19 and the mid-30's.
 
 
 6
 In addition to the five new desk clerks, Hewitt hired Mary Foster as the new assistant manager of the hotel. Foster, 44 years old, was described by witnesses as "youthful" and "very attractive." On the date Foster was hired, Aileen Peterson was still the assistant manager of the hotel.
 
 
 7
 Aileen testified that on the morning of January 28, 1988 she reported to work as usual, although she had heard rumors from other hotel employees that she was to be replaced that day. Before Aileen began work Duff walked into the desk area with Ms. Foster and introduced her to Aileen as the new assistant manager. Aileen answered, "You'll have to get someone to cover the desk." Duff responded, "Are you quitting?" Aileen said that she was. Soon thereafter Duff handed Aileen her final paycheck.[1] Duff did not tell Aileen that she could remain an employee of the hotel in some other capacity, although Hewitt and Duff claim that this was their intention. Aileen summarized her understanding of the events that morning by testifying that "Hewitt did not tell me he was replacing me, but it was obvious he was." The record indicates that, following Aileen's departure, Foster doubled as the assistant manager and first shift desk clerk-the same combination of duties that had been carried out by Aileen.
 
 
 8
 In early January of 1988, Hewitt asked Effie if she could work "some" on the third shift. According to her testimony, Effie understood this to be a request that she occasionally substitute for the third shift desk clerk. She agreed, saying that her mother was sick and required care at night, but that she could call on her brother occasionally to help care for her mother. On February 3, Park Inn began advertising for new employees, and hired a 19 year old woman as second shift desk clerk.
 
 
 9
 One or two days after the February 3 advertisement first appeared, Hewitt told Effie that she was being moved permanently to the third shift. According to her testimony, Effie told Hewitt that she could not change shifts permanently because her mother required care.[2] Hewitt responded that she would have to transfer to the third shift because he wanted to make some changes on the second shift. Effie told Hewitt that she would learn any new techniques he wanted to use on the second shift. Hewitt declined to accept this offer, saying that "you can't teach an old dog new tricks." A week later a new work schedule was posted without Effie's name on it. Effie asked Foster, the new assistant manager, whether her name's absence meant that she no longer had a job. Foster responded in the affirmative.
 
 
 10
 The charges of age discrimination were tried to a jury[3] which found that Park Inn willfully violated the ADEA by discharging Aileen and Effie because of age.[4] Park Inn moved for judgment n.o.v., and, in the alternative, for a new trial. The court denied the motions, and this appeal followed. On it, Park Inn only challenges the district court's denial of its motions for judgment n.o.v., claiming that the evidence was insufficient to support the finding of liability and, in any event, the award of liquidated damages.
 
 II
 
 11
 In reviewing the denial of a motion for judgment n.o.v. we apply the same standard as did the district court; that is, we ask whether the record, when viewed in the light most favorable to the non-moving party, contains evidence sufficient to support the jury's verdict. Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir. 1988). If there is sufficient evidence to support the jury's verdict, we must defer to the judgment of the jury even were we to disagree with its assessment of that evidence. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir. 1991).
 
 
 12
 Park Inn contends that the Commission failed to establish a prima facie case of age discrimination as to either Aileen or Effie. To establish a prima facie case of age discrimination under the ADEA[5] a plaintiff must show (1) that she is between the ages of 40 and 70 and is thus covered by the ADEA, 29 U.S.C. § 631(a), (2) that she has suffered an unfavorable employment action by an employer covered by the act, and (3) that the unfavorable act occurred under circumstances in which the employee's age was a determining factor in the action in the sense that but for her employer's motive to discriminate against her because of her age, she would not have suffered the action. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir. 1982).
 
 
 13
 In most ADEA cases (indeed in most employment discrimination cases brought under federal law) the only, or principally, disputed issue is that of discriminatory motive. See Lovelace, 681 F.2d at 239. Protected status and the suffering of an unfavorable employment action at the hands of the employer typically are not in genuine issue-are necessarily conceded by the employer. This case is atypical in that regard. Park Inn's primary defense at trial and its principal argument on appeal challenges the Commission's proof of an unfavorable employment action by the employer. That a termination of employment-obviously an unfavorable result from any employee's standpoint-occurred is not questioned. But Park Inn has contended throughout that this resulted from voluntary, unforced decisions of the employees, not from unwanted action of the employer." They were not fired; they quit."
 
 
 14
 Though it is not entirely clear, we think we must assume that Park Inn also has contended in an alternative, fall-back position that, in any event, discriminatory motive was not proven: "If we did fire, it was not because of age." Certainly, we cannot with confidence assume to the contrary that Park Inn has conditionally conceded proof of discriminatory purpose if firing is first found sufficiently proven.[6]
 
 
 15
 On that basis, with only protected status admitted by Park Inn, we must assess the sufficiency of the evidence to support findings both as to (1) whether firings rather than resignations occurred, and (2) if so, whether they would not have occurred but for the ages of the two employees.
 
 
 16
 * Though it may seem a little backwards, we consider first the evidence of discriminatory motive: whether, if firings occurred, they were the result, in part at least, of Park Inn's motive to replace the two employees "because of [their] age[s]." 29 U.S.C. § 623(a)(1). We do so because the evidence bearing on this issue is common to both employees, and because we think it is so clearly sufficient as to be dealt with fairly quickly.
 
 
 17
 We preface a summary of the relevant evidence with recognition that discriminatory motive in ADEA cases can be proved prima facie either directly or by aid of the McDonnell-Douglas proof scheme transposed from the Title VII context. See id . at 238. Here, there is sufficient direct evidence that analysis under the more complex shifting production-burden proof scheme need not be undertaken.
 
 
 18
 We summarize that evidence, as viewed in the light most favorable to the Commission, with its credibility accepted. The most telling perhaps were the newspaper advertisements for "young and energetic persons with outgoing personalities" for employment in the very positions (among others) then held by Aileen and Effie, ages 48 and 49 respectively, at a time when no reduction-in-force was contemplated. Bolstering this primary evidence that Aileen and Effie had been marked for replacement because of their ages relative to that of those being sought was the testimony of Aileen's replacement, Ms. Foster, that Hewitt had told her in the course of the interview process that he wanted to replace the older desk clerks with young, attractive employees. Further, there was the evidence that despite the plain warning on application papers against seeking age information, both Hewitt and Duff did so and recorded the information. Finally, there was the anecdotal snippet of Hewitt's remark to Effie that he could not "teach an old dog new tricks."
 
 
 19
 Park Inn produced evidence that explained away or flatly denied each of these items of damaging evidence. The jury might have accepted enough of it to find for Park Inn, but it did not. Either its credibility or its inferential force was found wanting. This was within the jury's prerogative in view of the conflicting evidence before it. The Commission's evidence may not have risen to the smoking gun level, but it came about as close as happens in these cases, and it clearly sufficed to support the inference of discriminatory motive necessarily found by the jury in respect of these two employees.
 
 B
 
 20
 Turning to the sufficiency of the evidence to support the essential jury findings that the two employees were in fact fired, we first summarize the simple legal principles which control whether an employee has, for employment discrimination purposes, been actually discharged.
 
 
 21
 The general rule is that an actual discharge occurs when the employer, by words or acts, manifests a clear intention to dispense with an employee's services. Payne v. Crane Co., 560 F.2d 198, 199 (5th Cir. 1977). No specific words or acts are required, EEOC v. Service News Co., 898 F.2d 958, 962 (4th Cir. 1990); the words "fired" or "discharged" don't have to be used. See Service News, 898 F.2d at 960-62. An employer's label for its actions is of course a relevant consideration, but it can't control; the proper focus is on "the realities of the employee's situation," Schneider v. Tax Schack, Inc., 794 F.2d 383, 385 (8th Cir. 1986), so that, for example, the hiring of a replacement might support a finding of actual (or constructive) discharge under the particular circumstances. Stamey v. Southern Bell Tel & Tel. Co., 859 F.2d 855, 860 (11th Cir. 1988) (employee who upon returning from vacation found another assigned to her job properly found discharged).
 
 
 22
 (1)
 
 
 23
 Applying these general principles to Aileen's case, the evidence was sufficient to permit the jury to find that she was actually discharged by Park Inn's action in hiring Ms. Foster to take over her duties. The jury properly could have inferred from the total circumstances leading up to and including this act that in taking this action Park Inn was indicating its intention to dispense with Aileen's further services.
 
 
 24
 The jury need not have found this. It could have accepted Park Inn's version that it had no such intention and did not manifest it to Aileen; that she was free to remain if she but chose to. But the jury obviously did not credit this account, instead drawing the necessary contrary inference in Aileen's favor. There was ample credible evidence to support that inference. There was evidence that Aileen was officially still the assistant manager of the hotel when Ms. Foster was introduced to her out of the blue as the "new" assistant manager. There was evidence that when Aileen then indicated she was leaving, no one took the obvious step of saying to her-if that was Park Inn's intention-that she need not leave, that there was other work for her. Finally, there was the evidence-though disputed-that Aileen's final paycheck already had been prepared before her replacement as assistant manager was introduced to her.
 
 
 25
 This evidence sufficed to support, though obviously it did not compel, a finding that Aileen was actually discharged by Park Inn.
 
 
 26
 (2)
 
 
 27
 Effie's case is similar on this issue, and the evidence similarly suffices to support a finding that she was actually discharged by Park Inn. Here again, there was evidence from which the jury could have accepted Park Inn's version, thereby rejecting Effie's, that Effie simply quit voluntarily out of unhappiness with her work assignment. But the jury did not, instead accepting Effie's version that by requiring her to work hours that the hotel management knew were not practicable, Park Inn was effectively indicating its intention to have done with her services. This was a hotly disputed issue; it probably turned ultimately on whether the jury believed Effie's or Park Inn's version of just when Park Inn knew of her mother's health problems. If, as Effie contended, Park Inn management knew of it before assigning her to the incompatible shift, the jury properly could have inferred from this sequence of events exactly the intention on Park Inn's part asserted by Effie. Coupled with the powerful evidence that Effie, along with Aileen, had by then been marked for replacement, the jury was justified, though certainly not compelled, to infer in this act a consummation of the age-based design by forcing Effie into a untenable position which led to her formal discharge when she declined to accept it.
 
 III
 
 28
 This leaves the question whether the award of liquidated damages was supported by the evidence.
 
 
 29
 Liquidated-"double"-damages are recoverable "in cases of willful violations" of the ADEA. 29 U.S.C. § 626(b). A violation is "willful" under this provision when an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines v. Thurston, 469 U.S. 111, 126 (1985). Something more than a "simple violation of the statute" is required to prove willfulness so defined. Gilliam v. Armtex, Inc., 820 F.2d 1387, 1390 (4th Cir. 1987).
 
 
 30
 Park Inn contends that the evidence here does not meet the exacting standard of "knowing or reckless disregard," or, as we have emphasized, of "something more than a simple violation." Here, it is said, if violation there was, it was no more than that. In fact, the argument goes, any violation here proceeded not from willfulness in the relevant sense, but from a justified necessity to overhaul Park Inn's economically distressed operation. In support, Park Inn relies on our decisions in Gilliam and in Herold v. Hajoca Corporation, 864 F.2d 317 (4th Cir. 1988), in which we expressed hesitation in finding willfulness in violations driven by reduction-in-force necessities.
 
 
 31
 Whatever the general implications of Gilliam and Hajoca for reduction-in-force situations, they do not apply here. There was no such business necessity driving Park Inn's conduct. No reduction-inforce was being undertaken to deal with an economic downturn; replacement rather than reduction of the current work force was all that the evidence indicated was driving the Inn's personnel decisions.
 
 
 32
 Furthermore, another factor weighing heavily against upholding willfulness findings in Gilliam and Hajoca was the "thinness," and circumstantial nature of the evidence of violations. See Gilliam, 820 F.2d at 1390; Hajoca, 864 F.2d at 319-21. That cannot be said of the evidence here. As indicated in our assessment of the evidence here, that favoring the Commission, which the jury obviously credited, was "direct" and clearly sufficient to support a finding of at least "reckless disregard" as to whether the treatment of Aileen and Effie was "prohibited by the ADEA."
 
 
 33
 The district judge so concluded in declining to set aside the liquidated damage award, and we conclude that he did not err in so ruling.
 
 IV
 
 34
 This was a hotly disputed factual contest over questions of motive and design. The evidence was conflicting. The case was ably tried by counsel for the Commission and the defendant. The jury resolved the issues of violation and willfulness on evidence sufficient to support their verdict as a rational one.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 The parties disagreed as to how quickly Aileen received her paycheck. Aileen claims that she received it immediately, indicating that it had been prepared in advance, and thus supporting her contention that Duff intended to force her to leave that morning. Park Inn claims that Duff took several minutes to prepare the check, indicating that the check was not prepared in advance, and that Duff did not anticipate Aileen's immediate departure
 
 
 [2]
 Hewitt testified that it was during this conversation that he first heard that Effie would not be able to work permanently on the third shift. Apparently, the jury did not credit this testimony
 
 
 [3]
 Related Title VII claims were tried to the court and dismissed at the close of evidence
 
 
 [4]
 The jury found as to two other desk clerks that their discharges were for poor performance, and thus did not violate the ADEA. The jury also rejected a claim that Park Inn had failed to promote Aileen to General Manager because of her age and gender
 
 
 [5]
 The relevant provision of the ADEA states that:
 It shall be unlawful for any employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compen sation, terms, conditions or privileges of employment, because of such indi vidual's age.
 29 U.S.C. § 623(a)(1).
 
 
 [6]
 Lack of discriminatory motive has not been expressly advanced by Park Inn-as it might be-as an alternative, though logically inconsistent, theory of defense. It has, however, been urged throughout both as tending to support the no-firing-at-all defense, and as negating proof of any willfulness for liquidated damages purposes. It is for this reason that we assume the motivational element as well as the unfavorable employment action element of the ADEA claim to have been put in issue at trial and preserved as an issue on appeal