**Arthur Rogers IVEY, as Executor of Estate of Harry E. Berger, deceased, Plaintiff,**

**v.**

**Sadiye W. T. DAUS, Defendant.**

United States District Court
S. D. New York.

March 1, 1960.

Robert E. Nickerson, Greenwich, Conn., for plaintiff, Ivey, Barnum, O'Mara & Nickerson. John W. Roberts, Greenwich, Conn., of counsel.

Haliburton Fales, 2nd, New York City, for defendant, Robert W. Steele, New York City, of counsel.

DIMOCK, District Judge.

In this action, plaintiff, as executor of the will of Harry E. Berger, deceased, seeks to recover the sum of $10,000 alleged to have been loaned by the decedent to defendant, and the sum of $13,800 as unearned rent paid in advance under a lease from defendant to the decedent which was prematurely terminated as a result of a judgment in mortgage foreclosure proceedings. Defendant counterclaims for $75,000 damages alleged to have been suffered by reason of conversion of the furnishings of the leased premises by plaintiff.

The various controversies arise out of the facts hereinafter stated.

Under date of March 7, 1951, defendant leased to Berger, plaintiff's testator, a house and grounds on Indian Head Road, at Riverside, Connecticut, with its furnishings. The lease was to run for six years beginning May 1, 1951 and ending April 30, 1957. The total rent was $18,000, payable $3,000 a year at the monthly rate of $250 except that $9,000 for the last three years was to be prepaid in consideration "among other considerations, of the rental rate of Two hundred fifty ($250.00) Dollars per month, which the tenant agrees is less than the reasonable rental value of the premises and be-

low the rental rate which could be obtained for the rental of the premises."

Under date of April 2, 1951, this lease was amended so that its term was increased to seven years beginning May 1, 1951 and ending April 30, 1958 and the total rent was increased to $21,000 at the same rate. The $18,000 rent for the last six years of the term was prepaid for the same express consideration that the rental of the premises was fixed at a rate below what could otherwise be obtained.

On May 1, 1951, there was delivered to plaintiff's testator a chattel mortgage covering the furniture in the house purporting to secure a note for $10,000. This note and mortgage were executed by William T. Daus, husband of defendant, purporting to act as her attorney in fact. On May 1, 1951, plaintiff's testator delivered to defendant two checks payable to the order of defendant, one in the sum of $7,500 and the other in the sum of $2,500. The $7,500 check is indorsed: "Loan secured by chattel mortgage on furnishings & all art objects of House at Indian Head Road Riverside Connecticutt". Each check is indorsed: "Loan secured by chattel mortgage on all furnishings & art objects of House at Indian Head Road Riverside Connecticutt". Each check is further indorsed by defendant's signature directly beneath the legends just quoted. It is undisputed that defendant received $10,000 represented by these checks although she testified that the money was immediately turned over to her husband.

The note secured by the chattel mortgage provided for payment of the principal six years after its date of May 1, 1951 "or on the day following the termination by Harry E. Berger of his occupancy of my house at Riverside, Connecticut, whichever period is the longer".

On September 12, 1953, the tenancy was terminated by a mortgage foreclosure sale so that the note by its terms became due at the expiration of six years on May 1, 1957.

The tenant, plaintiff's testator, Harry E. Berger, had died on June 13, 1952, before the termination of the tenancy by foreclosure.

At the foreclosure sale on September 12, 1953, Mrs. Berger, widow of plaintiff's testator, bought in the leased real estate. She sold the real estate thereafter and plaintiff, on or about February 24, 1954, caused the removal of the furnishings from the house. Some of them have been destroyed, some sold at public auction and some are still in plaintiff's possession.

The first question that arises is whether defendant is liable for the payment of the note for $10,000 dated May 1, 1951 payable to plaintiff's testator. To succeed plaintiff must demonstrate defendant's liability on this note. The mere fact that plaintiff produces cancelled checks to defendant's order totalling $10,000 is not enough. It is only through the note that it can be shown that there was a promise to pay $10,000.

Defendant's husband, who executed the note and mortgage as her attorney-in-fact, died on September 10, 1953. No power of attorney authorizing him to act for defendant has ever been found. Nevertheless, he was in the habit of exercising complete control over his wife's business affairs and even went to the extent of having her sign blank sheets of paper on which he wrote various instruments over her signature. The checks by which the $10,000 was paid by plaintiff's testator are highly significant with their indorsement by defendant under the legend referring to and identifying them as the proceeds of the loan secured by chattel mortgage on the furnishings and all art objects of the house at Indian Head Road, Riverside, Connecticut. In the absence of other evidence this admission by defendant that the $10,000 represented by the checks to her order was the proceeds of a loan secured by chattel mortgage on the furnishings is sufficient to establish the fact that her husband's purported authority to act as attorney in fact for her was actual.

Under ordinary circumstances plaintiff would be entitled to judgment for $10,000 with interest at 5% from May 1, 1951 without reference to the fact that there was outstanding security for the loan. Lewis v. United States, 92 U.S. 618, 23 L.Ed. 513. Defendant would not ordinarily be entitled to defend upon the ground that plaintiff held security and was not offering to surrender it. Here, however, it is obvious that plaintiff will be unable to surrender all of the pledged property. Must defendant pay the mortgage debt and then run her chance of being able to collect a judgment obtained later against the estate upon its contractual obligation to return the security? That is not the law. The Restatement of Security states in section 57, page 155:

> "Where the pledgee sues the pledgor on his obligation the pledgor can obtain such equitable aid as may be necessary to effect the return of the pledged chattel or an accounting therefor."

Defendant here is thus entitled to a determination of what pledged items are still in plaintiff's possession, a determination of the value of the items which are not in plaintiff's possession and to have that value set off against the claim on the mortgage note. If and to the extent that such value is less than the mortgage debt, plaintiff will be entitled to judgment for this deficiency and a direction that the pledged items still in his possession may be retained as security for payment of the judgment. If and to the extent that such value exceeds the mortgage debt, defendant will be entitled to judgment for the excess and a direction that the pledged items still in plaintiff's possession be delivered to defendant. Defendant's claim for this relief is properly against plaintiff in his representative capacity. The obligation to restore the collateral upon payment of the debt was a contractual obligation of plaintiff's testator the burden of which passed to plaintiff as his executor upon the testator's death.

Plaintiff says that, with respect to the chattels sold, the amount for which the estate must account was fixed by the sale at the amount realized therefrom. Defendant says that the actual value of the property is the criterion. Plaintiff claims that the sale was justified because there was a breach of an implied agreement with respect to the pledged property which entitled plaintiff to accelerate the maturity of the mortgage note and to satisfy it from the pledged property. It is said that there was an implied agreement that defendant would permit acceleration of the maturity of the mortgage note if she did not fulfill her covenant that plaintiff's testator might quietly enjoy the leased premises as a place of storage of the pledged property. The answer to that is short and simple. There was no such covenant. The mortgage note itself contemplated the possibility that the debt might not mature until after plaintiff's testator had ceased to occupy the leased premises. The promise was to pay the principal "six (6) years after date or on the day following the termination by Harry E. Berger of his occupancy of my house at Riverside, Connecticut, whichever period is the longer". The mortgage contemplated the retention of the pledged property by the mortgagee until payment since it provided that he would, upon discharge of defendant's obligation, "return the goods and chattels".

The parties thus had in mind the eventuality that the mortgage would not be due before the plaintiff's testator left the premises and that the usual rule that the pledgee must care for the pledged property would come into play. While plaintiff was entitled to charge defendant with the expense of storing the pledged property he was not entitled to accelerate the maturity of the mortgage. Insofar, therefore, as plaintiff is unable to return the pledged property, he is liable in his representative capacity for its value which may be set off against his claim and, insofar as it exceeds that claim, may be the basis for a counter-

claim and an affirmative judgment thereon.

Defendant says that the chattel mortgage is void, citing section 49-94 General Statutes of Connecticut which reads as follows:

" * * * Chattel mortgages on household furniture to secure the amount loaned or advanced to the mortgagor for the purpose of purchasing the same shall be valid, but chattel mortgages not in connection with such purchases and subsequently taken on household furniture owned and in the possession of an individual or family and used primarily for housekeeping purposes shall be void."

It is highly dubious whether the statute applies to a case where possession passes to the mortgagee but, in any event, the transaction would be effective as a pledge. Defendant comes close to conceding this in saying that "the greatest right that the plaintiff can have is the right of the common law pledgee of property". So far as the present controversy is concerned it matters not whether the transaction was a chattel mortgage with a possessory pledge as additional security or merely a possessory pledge.

Plaintiff introduced evidence that unspecified items of the pledged property belonged to one or the other of defendant's two sons rather than to her. As will hereinafter appear another hearing in this case must be held. At that hearing the identity of any such items and the questions of their ownership and of authorization or ratification of the pledge by any owner other than defendant can be determined.

Defendant seeks a personal judgment against plaintiff on the theory that plaintiff's dealings with the pledged property amounted to a conversion. Plaintiff makes the point that he sued only in a representative capacity and that, since he is not before the court in his individual capacity, there cannot be a judgment against him in that capacity. This point was not raised by plaintiff either in his reply or by motion. Rule 9(a) F.R.Civ. P. provides in part:

"When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

The counterclaim contains the flat statement that plaintiff "Arthur Rogers Ivey took possession of the said premises and of the various items of furniture and personal property above referred to" and that he "sold and disposed of the said articles of furniture and personal property and otherwise converted the same to his own use and benefit". Thus the counterclaim pleads a claim against plaintiff individually, although plaintiff sued only in his representative capacity.

▮ Under these circumstances it was incumbent upon plaintiff, if he wished to stand upon the point that he had no capacity to be sued under the counterclaim, to raise that issue by specific negative averment as required by rule 9(a). Nothing of the kind appears in plaintiff's reply. In an almost exactly similar situation the Court of Appeals for the Ninth Circuit held in Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co., 206 F.2d 336, certiorari denied 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400, that a plaintiff, suing in a fiduciary capacity, who had failed to object by pleading or motion to the maintenance of a counterclaim against the plaintiff individually, had waived that objection. Thus, on account of plaintiff's failure to follow Rule 9(a) here, the objection is not available to him.

▮ Plaintiff's sale of part of the pledged property prior to maturity of the loan and the destruction of other items of pledged property at his direction constituted a conversion for which he is personally liable. The extent of his liability can be determined upon the subsequent hearing to be held in this case.

There remains plaintiff's claim for refund of rent paid in advance for the period during which plaintiff's testator and plaintiff were deprived of possession on account of foreclosure of the paramount real estate mortgages. Here, again, the answer is short and simple. It will be remembered that the sum of $18,000, rent for the last six years of the term, was prepaid "in consideration, among other considerations, of the rental rate of Two Hundred Fifty Dollars ($250.00) per month, which the Tenant agrees is less than the reasonable rental value of the premises and below the rental rate which could be obtained for the rental of the premises."

The lease further provided:

"In no event, other than the cancellation of the Lease by the Landlord pursuant to the next paragraph hereof or the destruction of the premises by fire as hereinafter provided, shall the Tenant be entitled to the refund of any of the sum of Eighteen Thousand Dollars ($18,-000.00) paid in advance for the rental of the premises for the last six years of the seven year term."

The "next paragraph" referred to in the above quoted excerpt gave the landlord the right to terminate the lease after the expiration of the first three years of the term upon six months' notice in which case she was obligated to refund to the tenant such portion of the amount of the rent prepaid for the last six years of the lease as represented rent for the balance of such period.

The lease thus states as clearly as anything could be stated that the tenant is not entitled to the refund of any of the prepaid rent except under two conditions. Neither of these occurred. If the tenant chose to preserve his right to the prepaid term by buying in the paramount mortgages and averting foreclosure, he was at liberty to do so. On the other hand, when the tenant permitted the mortgages to go to foreclosure, a situation was created where, under the express terms of the lease, the tenant was not entitled to a refund.

Upon the trial of this action it was agreed that the court should first pass upon the question of liability and then, if necessary, evidence would be taken on the question of damages. The parties may arrange with my chambers for a hearing on the questions left open by this opinion.