842 F.2d 734
 127 L.R.R.M. (BNA) 3247, 108 Lab.Cas. P 10,402
 DISTRICT 29, UNITED MINE WORKERS OF AMERICA; Jennings Fry:
Denny R. Lafferty, Plaintiffs-Appellees,
v.
The NEW RIVER COMPANY, a West Virginia Corporation,
Defendant-Appellant,
The United Mine Workers of America 1974 Benefit Plan and
Trust; The United Mine Workers of America 1950
Benefit Plan and Trust, Defendants-Appellees.
 No. 87-1586.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 4, 1988.
Decided March 24, 1988.
 
 Richard J. Bolen (Scott K. Sheets, Hudddleston, Bolen, Beatty, Porter & Copen, Huntington, W.Va., on brief), for defendant-appellant.
 George Nicholas Davies, District 29, United Mine Workers of America (Gerald E. Cole, Jr., General Counsel, Israel Goldowitz, Deputy General Counsel, Andree M. St. Martin, Asst. General Counsel, UMWA Health & Retirement Funds, Washington, D.C., on brief), for intervenors.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 The district court issued a preliminary injunction ordering appellant New River Company to provide health benefits for its former employees, appellees Fry and Lafferty. Following their termination, Fry and Lafferty filed a grievance for wrongful discharge against New River. In a negotiated settlement of their grievance, however, Fry and Lafferty received lump sum payments from New River in return for which they executed documents of "Receipt and Release," releasing New River from all claims arising out of their employment and the grievance. Because these releases relieve New River of any obligation to provide health benefits to Fry and Lafferty, there is no possibility that Fry and Lafferty will prevail on the merits of their claim against New River. We therefore vacate the district court's order granting the preliminary injunction and remand with directions to dismiss New River from this lawsuit.
 
 I.
 
 2
 New River laid off Fry and Lafferty, members of District 29 of the United Coal Workers of America, in May of 1980. On May 20, 1980, Fry, Lafferty, and others filed a class action grievance against New River for violating the terms of the National Bituminous Coal Wage Agreement of 1978. Grievants sought "all wages, vacation float days, sick days and any other rights we have under the contract ... [including] panel rights and low earning slips and our hospital cards."
 
 
 3
 While the grievance was pending, Fry and Lafferty obtained employment with the Summerlee Coal Processing Company for an unspecified period of time in 1981. When their employment with Summerlee ended, Fry and Lafferty received their service pensions under the 1974 Pension Plan. They were also notified that Summerlee was responsible for their health benefits. Subsequently, the trustees of the 1974 Benefit Plan and Trust determined that Summerlee was "no longer in business" and, under the terms of the Plan, the Trust began providing appellees' health benefits.
 
 
 4
 The grievance was eventually submitted to arbitration. On October 21, 1983, the arbitrator held that New River had violated the 1978 Coal Wage Agreement and ordered New River "to compensate such employees for any lost earnings, less compensation earned from other employment and less unemployment compensation received" from the time of their lay off until the effective date of their retirement plan pensions.
 
 
 5
 Following the arbitrator's decision, the parties entered into settlement negotiations which culminated in a settlement of the grievance and arbitrator's award. Under the terms of the settlement agreement, Fry and Lafferty received lump sum payments of $22,203.67 and $23,956.47, respectively, and executed identical documents of "Receipt and Release." The Receipts and Releases provided in relevant part:
 
 
 6
 NOW, THEREFORE, in consideration of the foregoing premises ... and in consideration of the sum of $22,203.67 (23,956.47) ... the undersigned has released and discharged ... The New River Company ... of and from any and all grievances, actions, causes of action, claims or demands, whether sounding in tort, contract, or based on statute or otherwise, including but not limited to any and all claims which the undersigned may have had as a result of his employment ..., or as a result of the termination of that employment, or as a result of the denial of seniority or panel or transfer rights after such termination, or in any manner relating to the undersigned's seniority or panel or transfer rights under the National Bituminous Coal Wage Agreement of 1978, or in any manner relating to the aforesaid class action grievance or Case No. 81-29-83-413....
 
 
 7
 The undersigned hereby acknowledges and assumes all risk, chance, hazard that the loss sustained by the undersigned may be greater or more extensive than is now known, anticipated or expected....
 
 
 8
 After receiving the settlement award, Fry and Lafferty notified the 1974 Benefit Plan and Trust of the arbitrator's decision and petitioned the Trust for reconsideration of their pension credit in light of that decision. The Trust awarded Fry and Lafferty additional pension time and their pensions were increased based on the arbitrator's award of back pay through their retirement dates. At the same time, the Benefit Plan and Trust notified Fry and Lafferty that the Trust would no longer provide their health benefits because the payments of "back pay or earnings for lost compensation" made New River rather than Summerlee their last signatory employer, and, as such, New River was responsible for providing their health benefits under Article XX(c)(3) of the National Bituminous Coal Wage Agreements.
 
 
 9
 When New River refused to provide Fry and Lafferty with health benefits, Fry and Lafferty invoked the dispute resolution procedure of Article XX(e)(6) of the Coal Wage Agreement. In ROD Opinion 81-632, the Trustees concluded that, based on the arbitrator's award of lost earnings, New River was appellees' last signatory employer and therefore was obligated to provide their health benefits. When New River again refused to provide the health benefits, Fry and Lafferty brought this action in the United States District Court for the Southern District of West Virginia seeking injunctive relief against New River. The complaint was later amended to add the 1950 and 1974 Benefit Plans and Trusts as defendants. After a hearing, the district court issued a preliminary injunction against New River on March 6, 1987, requiring New River to provide health benefits to Fry and Lafferty. New River now appeals the district court's order.
 
 II.
 
 10
 In determining whether a preliminary injunction should issue, the trial court must evaluate the balance of hardships between the parties and the interest of the public. If that balance is struck in favor of the plaintiff, the court must be satisfied that "grave or serious questions are presented" in the plaintiff's case. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195-96 (4th Cir.1977). We find that the district court erred in granting the injunction in this case because there is no likelihood that appellees can prevail on the merits of their claim against New River.
 
 
 11
 In assessing the merits of appellees' claim, we need not address the question of whether New River was the last signatory employer of Fry and Lafferty, and as such was contractually liable under the terms of the Coal Wage Agreement to provide them with lifetime health benefits. Fry and Lafferty explicitly waived any and all claims they had against New River relating to their employment, termination, or the class action grievance. In so doing, Fry and Lafferty released New River of any obligation it may have had to provide them with health benefits.
 
 
 12
 We cannot credit appellees' claim that in executing the general releases they neither knowingly nor intentionally released New River from any obligation to provide them with health benefits. While it is true that the release is broadly drafted and does not specifically mention health benefits, release of those benefits is contemplated by the terms of the agreement.
 
 
 13
 The terms of the release are clear. In exchange for substantial consideration, Fry and Lafferty released and discharged New River from any and all actions, causes of action, and claims, including those sounding in contract arising as a result of their employment. This broad language certainly encompasses appellees' action against New River for health benefits. That Fry and Lafferty knowingly relinquished their health benefits claim against New River is supported by the language of the grievance. In the grievance, appellees sought any rights they had under the contract, including their "hospital cards," or health benefits. These claims were waived when appellees released all claims relating to the class action grievance. Furthermore, Fry and Lafferty expressly assumed the risk that their loss might be greater than then known or anticipated. They cannot now complain that they did not know that they would ultimately wish to seek health benefits from New River.
 
 
 14
 Furthermore, there is nothing in the circumstances surrounding the settlement to suggest that Fry and Lafferty were unfairly disadvantaged in the execution of the releases. Appellees' bargaining position going into the negotiations was enhanced by the arbitrator's decision in their favor. They were represented during settlement negotiations by their union representative. The release, although drafted by counsel for New River, was reviewed and approved by District 29's general counsel. Fry and Lafferty read the release and conferred with the union representative and attorney before signing it. Everything indicates that the Receipts and Releases were knowingly and intelligently adopted. In exchange for valuable consideration, Fry and Lafferty waived all claims against New River, including their present claim for health benefits.
 
 III.
 
 15
 Appellees have pointed us to no statutory provision precluding the knowing and voluntary relinquishment of employee health benefits. Although ERISA prohibits the forfeiture of vested retirement benefits except as expressly provided, see 29 U.S.C. Sec. 1053(a); Allessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511-12, 101 S.Ct. 1895, 1900-01, 68 L.Ed.2d 402 (1980), that provision is inapplicable here. The releases executed by Fry and Lafferty are not involuntary forfeitures, but rather the employees' voluntary waiver of their known benefits. Appellees have not suggested that anything in ERISA prohibits such a release of health benefits.
 
 
 16
 Likewise, there is no merit to appellees' contention that, by not disclosing that health benefits were subject to waiver or release by the employee, New River's Summary Plan Description violates 29 U.S.C. Sec. 1022. Section 1022 requires that employees be furnished with a summary description of their benefit plans that includes "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. Sec. 1022(b). This section requires employers to disclose how benefits may be unknowingly or involuntarily lost. Nothing in this section suggests that employers must inform plan participants that they may voluntarily waive their rights.
 
 
 17
 Because we find that by executing the Receipts and Releases, appellees waived any claims they may have had against New River, we direct that the district court's order granting the injunction be vacated and New River Company be dismissed from the suit. The case is remanded for further proceedings between appellees and the United Mine Workers 1974 and 1950 Benefit Plans and Trusts.