**RHODES, INC., as named fiduciary for The Rhodes, Inc. Group Health Plan, Plaintiff,**

v.

**John F. MORROW, Morrow, Alexander, Tash & Long, Forrest Dean Garner, Melinda A. Pickard, by and through her Guardian Ad Litem James H. Gilley, Jr., Safeco Life Insurance Company, and Jamestown Life Insurance Company, Defendants.**

**No. 6:95CV288.**

United States District Court, M.D. N. Carolina, Winston–Salem Division.

Sept. 13, 1996.

Edwin R. Gatton, Greensboro, NC, Donald B. Harden, Atlanta, GA, for plaintiff.

J. Robert Elster, Nancy C. Schneider, Edwin W. Bowden, Winston–Salem, NC, J. Alexander Barrett, Greensboro, NC, Margaret C. Lumsden, Raleigh, NC, John V. Burch, Atlanta, GA, for defendants.

## ORDER

TILLEY, District Judge.

This matter is before the Court on several motions by both parties: Defendants' Motion for Leave to File Amended Answer [Doc. # 37]; (2) Plaintiff's Motion for Leave to File Amended Complaint [Doc. # 39]; (3) Plaintiff's Motion to Stay Discovery [Doc. # 48]; (4) Defendants' Motion to Compel Discovery [Doc. # 51]; (5) Plaintiff's Motion for Judgment on the Pleadings [Doc. # 55]; and (6) Defendants' Motion for Summary Judgment [Doc. # 77].

For the reasons set forth in the contemporaneously filed Memorandum Opinion, IT IS ORDERED that Defendants' Motion for Leave to File Amended Answer [Doc. # 37] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Amended Complaint [Doc. # 39] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay Discovery [Doc. # 48] is DENIED AS MOOT;

IT IS FURTHER ORDERED that Defendants' Motion to Compel Discovery [Doc. # 51] is DENIED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment on the Pleadings [Doc. # 55] is GRANTED;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Doc. # 77] is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that partial Summary Judgment in favor of Plaintiff is GRANTED.

## MEMORANDUM OPINION

This matter is before the court on several motions from both parties: (1) Defendants' Motion for Leave to File Amended Answer [Doc. # 37]; (2) Plaintiff's Motion for Leave to File Amended Complaint [Doc. # 39]; (3) Plaintiff's Motion to Stay Discovery [Doc. # 48]; (4) Defendants' Motion to Compel Discovery [Doc. # 51]; (5) Plaintiff's Motion for Judgment on the Pleadings [Doc. # 55]; and (6) Defendants' Motion for Summary Judgment [Doc. # 77].

### I. Facts

Defendant Forrest Dean Garner's children were injured in an automobile accident in September, 1991 when they were struck head on by another vehicle. As a result of the accident, one of Defendant Garner's children was killed and two of the other children were seriously injured. Defendant Garner was then employed by Rhodes, Inc. and claimed benefits under the Rhodes, Inc. Group Health Plan ["the Plan"] to defer some of the expenses associated with the childrens' injuries. The Plan paid out over three hundred thousand dollars on behalf of the Garner children. Before the Plan paid any amount, however, Defendant Garner signed a Right of Reimbursement Agreement which, in part, stated that Defendant Garner agreed to reimburse the Plan "out of any recovery by settlement, judgment, or otherwise, from any person organization [sic] responsible [for the subject injury], or from such person's or organization's insurance." (Exhibit I to Defs' Br. in Supp. of Mot. for Summ. J.) Subsequently, the Garner family retained John Morrow as counsel and sought recovery from the driver of the other car involved in the September 7th accident. Recovery was obtained from the tortfeasor's insurance company and, after subtracting his fee from that sum, Defendant Morrow remitted the remaining portion of those funds to the Plan. However, the limits of liability on the tortfeasor's policy were such that a complete recovery could not be had. Therefore Defendant Garner obtained a settlement from Nationwide Insurance, his wife's underinsurance coverage carrier. Defendant Garner maintains that the Plan is not entitled to any of the monies obtained from his underinsurance carrier. Proper ownership of those funds is the subject of this lawsuit.

## II. Plaintiff's Motion to Amend Complaint

■ Plaintiff filed a Motion for Leave to Amend Complaint on November 15, 1995. The purpose of the amendment is to substitute parties and to add two defendants. Defendants have objected only to the addition of Nationwide as a defendant. Defendants claim that addition of Nationwide could prejudice Defendants by creating a conflict of interest that would require withdrawal of Petree Stockton as counsel for the Defendants. Petree Stockton represented Nationwide, the Garners' underinsurance carrier, in negotiating the accident settlement. The funds from that settlement are at issue in this matter. Petree Stockton obtained Nationwide's consent to its current representation of the Defendants.

Under Rule 15 of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." It appears to the Court that the participation of Nationwide would facilitate proper and complete resolution of this action. Furthermore, the Court sees no reason why the addition of Nationwide, whose function in this action will be that of a stakeholder defendant, would in any way create a conflict of interest for Defendants' Counsel, Petree Stockton. Therefore, Plaintiff's Motion for Leave to Amend Complaint [Doc. # 39] is GRANTED.

## III. Plaintiff's Motion for Judgment on the Pleadings

■ Plaintiff filed a Motion for Judgment on the Pleadings [Doc. # 55] on February 16, 1996, seeking judgment it its favor on Defendant Garner's Counterclaim and Defendants' Fourth Affirmative Defense. Plaintiff claims that the counterclaim and the affirmative defense are asserted against Rhodes in its capacity as employer and can not be brought in this action where Rhodes acts only in its representative capacity as fiduciary of the Rhodes, Inc. Group Health Plan. Alternately, Plaintiff claims that the statute of limitations has run on Defendant Garner's counterclaim and that it is time barred.

■ A district court may grant a motion for judgment on the pleadings if the pleadings, construed in the light most favorable to the non-moving party, fail to state a claim for relief. *See, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). In this case, Plaintiff alleged in its complaint that it is the fiduciary of the Rhodes, Inc. Group Health Plan, (Compl. ¶ 2), and that allegation was admitted by the Defendants in their Answer, (Answer ¶ 2). Therefore, the fact that Rhodes, Inc. is suing in its fiduciary capacity is established for the purposes of this motion and the consideration of the motion may proceed on the merits.

A counterclaim under Rule 13 must be asserted against an "opposing party." Fed. R.Civ.P. 13. "The generally prevailing, although not uniform, view is that the 'opposing party' requirement means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity." *Banco Nacional De Cuba v. Chase Manhattan Bank,* 658 F.2d 875, 885 (2d Cir.1981). *See also, Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 543 n. 6, 106 S.Ct. 1326, 1332 n. 6, 89 L.Ed.2d 501 (stating that "Acts performed by the same person in two different capacities 'are generally treated as the transactions of two different legal personages' "). In the case before this Court, it is alleged and admitted that Rhodes, Inc. is suing in its capacity as fiduciary of the Rhodes Inc. Group Health Plan. Because it is suing in a fiduciary capacity, Rule 13 dictates that it can be countersued only in that capacity.

■ Two exceptions to the general requirement that a party bringing suit in a representative or fiduciary capacity can be countersued only in that capacity should be noted. The first of these exceptions is that a counterclaim in an individual capacity will be allowed when "plaintiff has sued in a representative capacity but will benefit individually from any recovery." *Blanchard v. Katz,* 117 F.R.D. 527, 529 (S.D.N.Y.1987). A second exception exists and allows a counterclaim which is "made against a plaintiff in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim." *Id.*

These exceptions are not applicable in this case. First, any recovery obtained by Plaintiff will benefit only the Rhodes, Inc. Group

Health Plan and will not benefit Rhodes, Inc. in its individual capacity as a corporation and employer. Second, any recovery that Defendant Garner might ultimately obtain on his counterclaim or affirmative defense would have to be paid from the coffers of Rhodes, Inc. the employer and could not be paid, under the dictates of ERISA, by or from the accounts belonging to Rhodes, Inc. as fiduciary for the Rhodes, Inc. Group Health Plan. Because of this fact, equity and judicial economy do not dictate that the counterclaim against Rhodes, Inc. in its individual capacity should be allowed.

■ In opposition to Plaintiff's Motion for Judgment on the Pleadings, Defendants have offered several arguments. Defendants first argue that Plaintiff's motion is untimely because it was filed four months after the Plaintiff filed its reply and three months after the deadline for filing motions to amend. (Defs.' Br. in Opp'n to Pl.'s Mot. for J. on the Pleadings, 4). Rule 12(c) provides that a motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). The Court is satisfied that the timing of Plaintiff's Motion satisfies the dictates of this rule.

■ Next, Defendants argue that Plaintiff waived the capacity defense. Rule 9(a) dictates that "[w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of a party to sue or be sued in a representative capacity, the party desiring to raise the issue shall do so by specific negative averment...." Fed.R.Civ.P. 9(a). In this case, the Plaintiff answered Defendants Fourth Affirmative Defense and Defendant Garner's counterclaim on the merits before subsequently filing a Motion for Judgment on the Pleadings in an effort to dispose of those claims. See, Pl.'s Reply to Countercl. [Doc. # 22]. Defendants assert that failure to raise the objection in a specific negative averment violated the dictates of Rule 9(a) and thus the objection is waived. There is some case law support for Defendants' position. See, Pioche Mines Consol. Inc. v. Fidelity–Philadelphia Trust Co., 206 F.2d 336, 337 (9th Cir.), cert. denied, 346 U.S. 899, 74 S.Ct. 225, 98 L.Ed. 400 (1953); and Ivey v.

Daus, 181 F.Supp. 793 (S.D.N.Y.1960) (each case holding that Plaintiff may not answer a counterclaim or defense on the merits and later be heard to complain that it is not an "opposing party" for purposes of the counterclaim or defense). In response, Plaintiff claims that Defendant has confused the distinction between "capacity to sue" under Rule 9(a) and "opposing party" under Rule 13.

■ The Court finds that rule 9(a) does not govern this dispute and that Plaintiff has not waived its objection by answering Defendants' Fourth Affirmative Defense and Defendant Forrest Dean Garner's counterclaim on the merits. Instead, the Court finds that a motion for judgment on the pleadings may serve as an alternative vehicle for the presentation of Rule 12(b) defenses. In reality, Plaintiff's objection is that Defendants have, in their Fourth Affirmative Defense and Defendant Forrest Dean Garner's counterclaim, failed to state a claim upon which relief can be granted. A party making a motion for failure to state a claim on which relief can be granted after the close of the pleadings may use Rule 12(c) and style the motion as one for judgment on the pleadings. See, e.g., Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (7th Cir.1993) (party used Rule 12(c) to raise what was really 12(b)(7) defense). In addition, a number of courts have held that the standards under Rule 12(c) and Rule 12(b)(6) are identical. See, e.g., Sheppard v. Beerman, 18 F.3d 147 (2d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). Furthermore, Rule 12(h)(2) expressly preserves the defense of failure to state a claim and states that the defense "may be made in any pleading ... or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P. 12(h)(2). Therefore, because the Plaintiff's Motion for Judgment on the Pleadings is an alternate vehicle for setting forth a motion to dismiss for failure to state a claim on which relief can be granted, and because that defense is expressly preserved by Rule 12(h)(2), Defendants' waiver argument is without merit. Plaintiff's Motion for Judgment on the Pleadings as to Defendants' Fourth Affirmative Defense and Defendant

Forrest Dean Garner's counterclaim [Doc # 55] is GRANTED.

### IV. Summary Judgment

■ On April 1, 1996, Defendants filed a Motion for Summary Judgment. [Doc. # 77]. In response, Plaintiff asked that Defendant's Motion for Summary Judgment be denied and, instead, that summary judgment be granted in favor of Plaintiff. [Doc. # 81]. Summary Judgment may be granted in favor of a non-movant. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (stating that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence").

Summary judgment is proper only if there is no genuine issue as to any material fact. The moving party on a motion for summary judgment will have the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense or showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir.1993); *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

### A. The Summary Plan Description.

■ Defendants first argument is that Rhodes, Inc. is not entitled to reimbursement under the Summary Plan Description. ERISA requires employers to distribute to employees a summary plan description [SPD] which shall be "sufficiently accurate and comprehensive to reasonably appraise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Section 1022(b) contains several enumerated provisions which must be included in the SPD. A right to reimbursement or subrogation is not included among those enumerated provisions. Nevertheless, Defendants argue that Plaintiff has no right to recover funds from the settlement because such a right is not listed in the SPD. Defendants cite two district court cases in support of their contention. *See, Alco Standard Corp. v. Gilbert,* 1992 WL 91939 (N.D.Ill.) (unpublished opinion); *Corley v. Hecht Co.,* 530 F.Supp. 1155 (D.D.C.1982). The Court is not persuaded that the Fourth Circuit would take such an expansive view of the items that must be contained in the SPD. *See, District 29, United Mine Workers of Am. v. New River Co.,* 842 F.2d 734 (4th Cir.1988) In *New River Company,* the Fourth Circuit held that failure to disclose in an SPD that benefits were subject to waiver or release was not a violation of ERISA requirements. The court further noted that "[t]his section requires employers to disclose how benefits may be unknowingly or involuntarily lost." *Id.* at 737. The omission of a section describing the Plan's right to reimbursement or subrogation in no way is a failure to inform employees of a way in which benefits may be lost. In fact, such a provision would never come into play unless the Plan had, in fact, provided benefits on behalf of a covered person. The Court finds that inclusion of a right of reimbursement or subrogation provision in the SPD, although helpful, is not required by ERISA.

■ Defendant Garner next claims that he was mislead by a section of the SPD which states that, "[t]he employer has contracted with Southern Administrative Services to administer the program, but the employer is solely liable for the payment of any claims." (Exhibit B to Defs' Br. in Supp. of Mot. for Summ. J.) Defendant Garner claims that this statement in the SPD led him to believe the employer would be liable for all payments and that the coverage he received through Rhodes, Inc. was insurance coverage. (Exhibit M to Defs' Reply Br. In Supp. of Mot. for Summ. J.).

The regulations which accompany section 1022 and serve to implement that section state that "[i]naccurate, incomprehensible, or misleading explanatory material will fail to meet the requirements of this section." 29 C.F.R. § 2520.102–3. Therefore, if the language was misleading or ambiguous, it could constitute a violation of ERISA. The Court fails to see, however, how the above quoted language is susceptible of more than one interpretation. The clear idea that the sentence conveys is only that Southern Administrative Services has been hired to administer the program but that Rhodes, and not Southern Administrative Services, is responsible for the payment of benefits under the program. This sentence raises no inference regarding what claims will be paid, what will be disallowed, or anything at all concerning reimbursement. Since there is no remaining issue of material fact, Defendants' Motion for Summary Judgment [Doc. # 77] on this point is DENIED and summary judgment for Plaintiff is GRANTED on this issue.

## B. The Plan's Right to Reimbursement

 The Plan offers two theories to support its right to recover from settlement monies paid or owing to Defendant Melinda Pickard and Defendant Brandon Garner. The first theory is one of contract liability. Under this theory, the Plan asserts that Melinda Pickard and Brandon Garner were "covered persons" as defined in the Plan documents, accepted benefits under the Plan and are therefore obligated, under the terms of the Plan to reimburse the Plan. Furthermore, the Plan asserts that Forrest Dean Garner, the childrens' father, as their legal representative, both applied for and accepted benefits on their behalf and signed an agreement indicating that the Plan would be reimbursed from any settlements with third parties.

The second argument advanced by the Plan is one of unjust enrichment. Plaintiff contends that this theory controls in the event the first theory fails to provide a recovery for the Plan. Plaintiff notes that, under the Plan documents, the right to obtain benefits for expenses incurred as a result of third party action is expressly conditioned upon the covered person or his legal representative delivering to the plan a right to reimbursement agreement. Plaintiff argues that if Melinda Pickard and Brandon Garner were not obligated under the Right to Reimbursement Agreement signed by Forrest Dean Garner, then they did not satisfy the prerequisite for coverage and were unjustly enriched by the advancement of money from the Plan. Therefore, according to Plaintiff's argument, the Plan is now entitled to recoup those sums which were improperly paid.

In response to this argument, Defendants claim that Melinda Pickard and Brandon Garner were never obligated by their father's signature on the Right of Reimbursement Agreement. They further argue that the funds were properly advanced by the Plan because, under the North Carolina necessaries doctrine, their father was legally responsible for their hospital debts and expenses. They assert that the necessaries doctrine prevents the Plan from reaching settlement funds that belong to them and not to their father. In addition, Defendants claim that, because the Plan advanced money for medical expenses and the settlement funds at issue here are not designed to compensate for those expenses, they have not obtained a double recovery and have not been unjustly enriched.

In response to Defendants' contentions, Plaintiff argues that, even if the "necessaries doctrine" might otherwise apply, it is preempted by ERISA in this case. Therefore, the Plan is not forestalled from seeking recovery from Melinda Pickard and Brandon Garner under any of Plaintiff's theories.

The Plan provision which governs this dispute is as follows:

the Covered Person, by accepting benefits under this Plan for an accidental bodily injury or illness for which such Covered Person may seek recovery from a third party or his personal representative, agrees, in the event of a recovery from such third person on account of such injury or illness, to pay to the Plan Administrator an amount equal to the value of the benefits provided under this Plan on account of such injury or illness. In the event of an accident with may give rise to a right of a

Covered Person to recovery from a third party, the right to receive the benefits under this Plan shall be conditioned upon the Covered Person or his personal representative delivering to the Plan a signed agreement to repay amounts recovered from the third party and an instruction to the attorney from the Covered Person to repay the Plan from such recovery in form satisfactory to the Plan. Recovery includes any amount received, whether by judgment, settlement or otherwise. For purposes of this provision, the value of the benefits provided under this Plan shall be conclusively presumed to be the cost to this Plan of providing such benefits. The payment to this Plan required under this paragraph shall not be in an amount which exceeds the proceeds of any such recovery after deducting reasonable and necessary expenditures in effecting such recovery, including attorney's fees.

(Exhibit G, p. 33 to Defs' Br. In Supp. of Mot. for Summ. J.) In addition, Defendant Garner signed two documents before the Plan paid any monies for Melinda Pickard and Brandon Garner's medical bills. (Documents attached as Exhibits H and I to Defs' Br. in Supp. of Mot. for Summ. J.) In one document, he crossed out plural pronouns (we, our, us) and left only singular pronouns (I, my, me). (Exhibit H to Defs' Br. in Supp. of Mot. for Summ. J.) This document, which contains a provision for reimbursement and subrogation, is signed by Forrest Dean Garner (as insured) and a witness. It is not signed by the children nor is there a blank for the signature of their legal guardian. The document does contain, below the document provisions and immediately above Forrest Dean Garner's signature, a handwritten line as follows: "Re: Melinda Pickard and Brandon Garner." The other document, titled "Right of Reimbursement Agreement", (Exhibit I to Defs' Br. in Supp. of Mot. for Summ. J.), contains no reference to Brandon Garner. This document contains the signature of Forrest Dean Garner on the "employee" line, the typewritten name of Melinda Pickard on the "dependent" line and the signature line for the legal guardian of the minor/dependent remains blank.

To accept Defendant's argument that the children are not directly obligated to reimburse the Plan because they were not the true beneficiaries of the Plan would not only circumvent the purposes of the Plan and ERISA, but would also require the Court the ignore the first sentence of the Third–Party Recovery provision found at section 8.8 of the Master Plan document. (Exhibit G to Defs' Br. in Supp. of Mot. for Summ. J.) The first sentence provides, in part, that

> the Covered Person, by accepting benefits under this Plan for an accidental bodily injury or illness for which such Covered Person may seek recovery from a third party or his personal representative, agrees, in the event of a recovery from such third person on account of such injury or illness, to pay to the Plan Administrator an amount equal to the value of the benefits provided under this Plan on account of such injury of illness.

It is not subject to dispute that Melinda Pickard and Brandon Garner were "covered persons" under the Plan definitions. They had been enrolled in the Plan by their father and met the applicable Plan definitions for coverage. Benefits were paid out by the Plan on their behalf and, by accepting those benefits, they are obligated to reimburse the plan from any third party recovery.

Defendants' argument based on the North Carolina "necessaries doctrine" is without merit. The "necessaries doctrine" in North Carolina provides that "a child living with its parents cannot be held liable even for necessaries 'unless it be proved that the parent was unable or unwilling to furnish the child with such clothes, & c., as the parent considers necessary.'" *North Carolina Baptist Hosp. v. Franklin,* 103 N.C.App. 446, 405 S.E.2d 814, 816, *rev. denied,* 330 N.C. 197, 412 S.E.2d 58 (1991) (citations omitted). The Defendants' argument, therefore, is that because the debt for medical expenses and hospital bills belonged to the parent under this doctrine then the parent is the true beneficiary under the Plan. Under this argument, the parent is obligated to the Plan but the children, owners of the settlement funds, are not. There are several problems with this contention.

First, the Plan does not pay on account of debt but instead pays "for accidental bodily injury and illness." Forrest Dean Garner was not injured or ill, his children were. The Plan did not make payment because of his debt, but rather on account of the childrens' injury. Furthermore, the failure of the children to sign a Right to Reimbursement Agreement is not fatal to the Plan's claim. The children accepted benefits under the Plan and are obligated under the first sentence of Section 8.8 of the Plan regardless of whether they are obligated under the Right to Reimbursement agreement. Furthermore, as Plaintiff correctly notes, the Fourth Circuit has affirmed the right of ERISA plans to recover even in the absence of signed reimbursement agreements. *See e.g., McInnis v. Provident Life & Accident Ins. Co.*, 21 F.3d 586 (4th Cir.1994) (Plan recovery allowed despite Plaintiff's refusal to sign a Right to Reimbursement agreement); *Hampton Industries Inc. v. Sparrow,* 981 F.2d 726 (4th Cir.1992) (considering the issue of preemption but allowing the Plan to recover despite the Defendant's failure to sign a subrogation agreement).

■ Secondly, even if the "necessaries doctrine" were applicable in this situation, it would be preempted by ERISA. The Supreme Court has determined that state laws which "relate to" or have a "connection" with ERISA benefit plans may be preempted. *See, FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Furthermore, the Court has noted that "we have not hesitated to apply ERISA's pre-emption clause to state laws that risk subjecting plan administrators to conflicting state regulations." *Id.* at 59, 111 S.Ct. at 408. The Court recognized that "[t]o require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." *Id.* at 60, 111 S.Ct. at 408 (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Similar to the Pennsylvania subrogation statute that the Supreme Court determined was preempted in *FMC Corp. v. Holliday,* the North Carolina necessaries doctrine would prevent seamless administration of nationwide or multi-state plans. Plan administrators would have to calculate the diminished recovery that could be obtained in the event a child was injured and received payments under the ERISA plan in a state with a provision similar to the necessaries doctrine. Plans would have to be restructured and benefits for minors or dependents could be correspondingly diminished as a result. This is precisely the type of situation the ERISA preemption provision, 29 U.S.C. § 1144(a), was designed to address.

Furthermore, this statute is not aimed at the insurance industry and is not saved under the so-called "insurance savings clause," 29 U.S.C. § 1144(b)(2)(A). Even if the state law were saved under this provision, the deemer clause, 29 U.S.C. § 1144(b)(2)(B), would prevent operation of the insurance savings clause because this is a self-funded employee benefit plan.

This reading is in accord with the Fourth Circuit decisions on the topic. *See e.g., McInnis v. Provident Life & Accident Ins. Co.,* 21 F.3d 586 (4th Cir.1994) (holding that the North Carolina wrongful death statute was preempted); *Hampton Indus. Inc. v. Sparrow,* 981 F.2d 726 (4th Cir.1992) (finding that the North Carolina antisubrogation statute was preempted). In fact, in *McInnis,* the court stated that the North Carolina wrongful death statute was preempted "to the extent that the state law precludes operation of the terms of the "Acts of Third Parties" clause in the plan. We will thus give the plan's terms and conditions full effect...." 21 F.3d at 589. Similarly, the necessaries doctrine must be preempted in this case to allow operation of the Third Party Recovery provision of the Rhodes Health Plan.

Therefore, under either the plain meaning of the contract or through preemption of the North Carolina "necessaries doctrine," Melinda Pickard and Brandon Garner are obligated to reimburse the Plan. They were beneficiaries of the Plan and should not be allowed to deplete Plan assets to the detriment of other Rhodes employees through creative legal argument.

Defendants further claim that, even if the children are obligated to the Plan, they are only obligated to repay settlement sums designated as "medical benefits" or similarly categorized. This argument is based on the fact that the Plan pays for medical benefits and not for other types of compensation (for instance, pain and suffering). Defendants therefore claim that only those settlement funds specifically titled "medical benefits" should be subject to the Plan's reimbursement provision. This argument fails as well.

Under the plain meaning of the Plan third-party recovery provisions, the Plan is entitled to funds "in the event of a recovery from such third person on account of such injury or illness." The Plan does not limit its entitlement to "recovery from a third party for medical benefits." Courts that have considered the issue have given effect to the plan terms. *See e.g., McIntosh v. Pacific Holding Co.,* 992 F.2d 882 (8th Cir.) *cert. denied,* 510 U.S. 965, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993) (giving effect to contract language which allowed recovery of funds beyond those designated as "medical expenses"); *Singleton v. Board of Trustees of IBEW Local,* 830 F.Supp. 630 (N.D.Ga.1993) (plan allowed to recover funds designated as compensation for "pain and suffering"). In fact, in the cases found where plan recovery was limited only to funds designated as "medical benefits," the language of the plan document itself provided the limitation. *See, e.g., Cooper Tire & Rubber Co. v. St. Paul Fire and Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995) ("[p]er the language of the Plan, Cooper Tire 'succeeds' only to rights of recovery an employee or dependent may have 'with respect to services or drugs covered by the Plan.'"). Plain meaning will be given to the Plan provision in this case and the Plan will be permitted to seek reimbursement from funds recovered "on account of such injury or illness."

The final argument Defendants make regarding the Plan's right of recovery against Melinda Pickard and Brandon Garner is that the phrase "third party" does not include underinsurance proceeds. This argument is apparently based on the idea that, since the proceeds came from a policy purchased by the Garner Family (specifically, Mrs. Garner), then the proceeds are first-party proceeds not subject to the recovery provisions in the Plan documents. The Court has reviewed Defendants' argument and the cases cited in support and finds them unpersuasive. The differentiation that Defendants would have the Court draw between first-party and third-party proceeds is a distinction that is inapplicable in this context.

In support of their contention, Defendants cite two Fourth Circuit cases and one case from this district. *See, A & E Supply Co. v. Nationwide Mutual Fire Ins. Co.,* 798 F.2d 669 (4th Cir.1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987) (considering the terms "first-party" and "third-party" in the context of an insurance "stacking" question)[1]; *Emick v. Dairyland Ins. Co.,* 519 F.2d 1317 (4th Cir.1975) (noting the difference between "first-party" and "third-party" in the context of insurance company obligations to the insured); *Smith v. Liberty Mutual Ins. Co.,* 449 F.Supp. 928 (M.D.N.C.1978), *aff'd,* 598 F.2d 616 (4th Cir. 1979), (determining, under North Carolina law, that a worker's compensation coverage carrier was not a "third party" for the purposes of bringing suit under the North Carolina Workers' Compensation Act). None of these cases are on-point and all would be applied, if at all, by analogy. A close reading of these cases reveals that none of them are controlling or even applicable to this case.

The question here is one of contract interpretation; what does "third-party" mean in the context of the Rhodes' Plan Third–Party

1. Examination of the provision of this case, cited by the Defendants, demonstrates the lack of relevance that these cases have to the issue at hand. Defendants cite a provision in *A & E Supply Co.* which reads as follows:

An insurer's first-party insurance obligation is its duty to compensate the insured for direct losses with the policy coverage. An insurer's third-party insurance obligation is its duty to defend the insured against claims by another, injured party and to indemnify the insured for losses sustained through such claims.

798 F.2d 669, 676 n. 8 (4th Cir.1986). This distinction is not instructive in the current question of health plan contract construction.

Recovery provision. One case is instructive on this question. In *Harmond v. Teamsters Joint Council, No. 83*, the court found that the trustees of a health plan were within their rights when they interpreted "the plan to enforce subrogation rights against the uninsured motorist coverage." 795 F.Supp. 783, 785 (E.D.Va.), *aff'd mem.*, 1 F.3d 1233 (4th Cir.1992). This Court, like the *Harmond* Court, in the absence of controlling case law to the contrary, will interpret the language of the Plan in accordance with its plain meaning.

In the context of the Plan, the plain meaning of "third-party" would seem to mean just that—another party, someone other than the Plan or the covered person.[2] The common sense, plain meaning of the Plan terms dictates that the Plan be allowed to recover from the underinsurance settlement proceeds in this case.

The Defendant's Motion for Summary Judgment [Doc. # 77] on this issue is DENIED and Summary Judgment for the Plaintiff on the obligation of Melinda Pickard and Brandon Garner to reimburse the Plan for sums paid on their behalf from the settlement proceeds is GRANTED.

**2.** The Third Party Recovery provision reads, in part, as follows:

the Covered Person, by accepting benefits under this Plan for an accidental bodily injury or illness for which such Covered Person may seek recovery from a third party or his personal representative, agrees, in the event of a recovery from such third person on account of such injury or illness, to pay to the Plan Administrator an amount equal to the value of the benefits provided under this Plan on account of such injury of illness. In the event of an accident which may give rise to a right of a Covered Person to recovery from a third party, the right to receive the benefits under this Plan shall be conditioned upon the Covered Person or his personal representative delivering to the Plan a signed agreement to repay amounts recovered from the third party and an instruction to the attorney from the Covered Person to repay the Plan from such recovery in form satisfactory to the Plan. Recovery includes any amount received, whether by judgement, settlement or otherwise. For purposes of this provision, the value of the benefits provided under this Plan shall be conclusively presumed to be the cost to this Plan of providing such benefits. The payment to this Plan required

## C. Violation of Fiduciary Duty

Plaintiff claims that Defendant Morrow, by virtue of the fact that he knew of the Plan's claim and exercised discretionary control over settlement funds, was an ERISA fiduciary with regard to those assets. (Compl., ¶ 44 and ¶ 48). Plaintiff further asserts that Defendant Morrow violated that fiduciary duty by distributing those settlement funds. (Compl., ¶ 49).

The definition of "fiduciary" under ERISA is as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Fourth Circuit recently refused to impose fiduciary status

under this paragraph shall not be in an amount which exceeds the proceeds of any such recovery after deducting reasonable and necessary expenditures in effecting such recovery, including attorney's fees.
(Exhibit G, p. 33, to Defs' Br. in Supp. of Mot. For Summ. J.)
In addition, one reimbursement agreement (the one which contains a reference to both Melinda Pickard and Brandon Garner) contains a provision expansive enough to encompass any recovery:
if payments are made under said Group Policy for treatment or service on account of the same injury or sickness and to the extent of such payments made (but not in excess of the proceeds of any recovery),
(a) I agree to reimburse the Company from proceeds of any recovery received by me because of such injury or sickness; and
(b) the Company shall be subrogated to my rights to such recovery and my interest in the proceeds of such recovery;
if such recovery is based upon the covered individuals' lawful claim, demand or right against a third party or parties (including an insurance carrier).
(Exhibit H to Defs' Br. In Supp. of Mot. for Summ. J.)

on an attorney for a health *plan, Custer v. Sweeney,* 89 F.3d 1156 (4th Cir.1996), and the Court is certainly wary to impose that status on the attorney for a plan *beneficiary.*

The Court does not find that Defendant Garner's signature on the Right to Reimbursement Agreement automatically rendered the settlement funds a trust asset. Furthermore, the reasoning of the Eleventh Circuit in a similar case is persuasive. In *Chapman v. Klemick,* an attorney for a plan beneficiary received settlement funds and distributed them to his client after subtracting his fee. 3 F.3d 1508, 1509 (11th Cir. 1993), *cert. denied,* 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). In declining to impose ERISA fiduciary status on the attorney, the Eleventh Circuit reasoned that "[a]n attorney has an ethical obligation to his or her client that does not admit of competing allegiances.... Imposing fiduciary status in cases such as this one would likely render it difficult for trust fund beneficiaries with personal injury claims to obtain counsel." *Id.* at 1511. *See also, Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Gentner,* 50 F.3d 719 (9th Cir.1995) (reaching the similar conclusion that the attorney of the ERISA plan beneficiary violated no duty to the plan by distributing settlement proceeds even though he had knowledge of the subrogation agreement and the plan's claim).

The Court finds no basis for imposing ERISA fiduciary status on Defendant Morrow. Defendants Motion for Summary Judgment [Doc. # 77] on this issue is GRANTED.

## D. Constructive Trust

■■■ The Court may look to North Carolina law to determine the elements for establishing a constructive trust claim. *See, Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308–09, 1 L.Ed.2d 314 (1957) (noting that the existence of a constructive trust is a matter of state law, even though the lower court was not sitting in diversity). North Carolina courts have stated that "a constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation—in view of which equity

transfers the beneficial title to some person other than the holder of the legal title." *Security Nat'l Bank v. Educators Mutual Life Ins. Co.,* 265 N.C. 86, 143 S.E.2d 270 (1965). The Restatement of Trusts indicates that a constructive trust "is a relationship with respect to property usually subjecting the person by whom its title is held to an equitable duty to convey the property to another on the ground that the title holder's acquisition of the property is wrongful and that unjust enrichment would occur if the title holder were permitted to retain the property." Restatement (Third) of Trusts § 1 cmt. e (1996); *See also,* Restatement (First) of Restitution § 160 (1937) (defining constructive trust).

As an additional consideration, the North Carolina Supreme Court, like most other courts, has held that a "constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law." *Security National Bank,* 143 S.E.2d 270, 276. The Court finds here that, due to the nature of the structured settlement and the payouts still to be made under that settlement, the Plan has an adequate remedy at law. Therefore, the claim for a constructive trust must fail. Defendants' Motion for Summary Judgment [Doc. # 77] on the issue of constructive trust is GRANTED.

## E. Negligent Misrepresentation

■■■ Under the North Carolina, as well as the majority rule, the tort of negligent misrepresentation "occurs when in the course of a business or other transaction in which the individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction without exercising reasonable care in obtaining or communicating the information." *Fulton v. Vickery,* 73 N.C.App. 382, 326 S.E.2d 354, 358 *rev. denied,* 313 N.C. 599, 332 S.E.2d 178 (1985). Furthermore, the false representation generally cannot be to a future occurrence because the "determination of truth or falsity must be made at the time of the representation." *Childress v. Nordman,* 238 N.C. 708, 78 S.E.2d 757 (1953). It is clear that Defendant Morrow did represent to the

Plan that, if the Plan would advance money to the Garners for the payment of medical bills, he and his clients would honor any valid subrogation agreement. (Exhibit 4 to Pl's Resp. In Opp'n to Defs' Mot. For Summ. J. [Doc. # 82]). Although this representation may have given rise to some valid cause of action, it is not one for negligent misrepresentation. Defendants' Motion for Summary Judgment [Doc. # 77] on the issue of negligent misrepresentation is GRANTED.

### F. Tortious Interference with Contract.

 To make out a claim for tortious interference with contract, the Plaintiff must show: (1) a valid contract existed between plaintiff and a third party; (2) the outsider had knowledge of that contract; (3) the outsider intentionally induced the third party not to perform the contract; (4) the outsider acted without justification; (5) the outsider's interference caused the plaintiff actual damages. *See, Childress v. Abeles,* 240 N.C. 667, 84 S.E.2d 176, 181–82 (1954); Restatement (Second) of Torts § 766 (1979). This tort, if applied to an attorney offering advice to a client on the validity of a contract or the necessity of complying with an agreement, would so restrict that attorney's ability to counsel the client as to make application of the tort, in that instance, against public policy. Furthermore, the Court believes that the attorney should not be considered an "outsider" for the purposes of applying the elements of this tort. Instead, the attorney, as a representative of the client, is the same entity as the client within the elements of this tort. Defendant Morrow was not an "outsider" who interfered with the Plan's contract with Defendants Forrest Dean Garner, Brandon Garner, and Melinda Pickard. The Defendants' Motion for Summary Judgment [Doc. # 77] on the issue of tortious interference with contract is GRANTED.

### G. Collateral Attack on State Court Judgment

In their Reply Brief in Support of the Motion for Summary Judgment [Doc. # 83], Defendants claim that this action is a collateral attack on a state court judgment because the settlement was approved in state court. The Court finds this argument unpersuasive. Because the argument was not raised in the Motion for Summary Judgment or even the Brief in Support of Summary Judgment, Plaintiff was denied the opportunity to respond to the argument and the Court therefor declines to comment further upon it.

### V. Remaining Motions

Plaintiff's Motion to Stay Discovery is DENIED as MOOT.

Defendant's Motion to Compel Discovery is DENIED as MOOT.

Plaintiff's Motion to Amend Answer is DENIED for the reasoning stated in Part III herein.